J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500
Facsimile:   650.938.5200

Counsel for Defendants
NETFLIX, INC. and NETFLIX STREAMING
SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING LLC,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC. and NETFLIX STREAMING SERVICES, INC.,<br><br>Defendants. | Case No.: 2:19-cv-06361-GW(JCx)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS NETFLIX, INC. AND NETFLIX STREAMING SERVICES, INC. FOR AWARD OF ATTORNEY FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          February 3, 2020<br>Time:         8:30 a.m.<br>Courtroom:  9D<br>Judge:        George H. Wu |

FENWICK & WEST LLP
ATTORNEYS AT LAW

NETFLIX'S MOTION FOR ATTORNEY FEES;
MPA IN SUPPORT

Case No. 2:19-cv-06361-GW(JCx)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION...........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES............................................3

I.    INTRODUCTION....................................................................................3

II.   FACTUAL BACKGROUND....................................................................4

    A.    Realtime filed suit against Netflix in Delaware only to voluntarily dismiss the case when an adverse ruling was imminent and re-file the same claims in this Court the very next day. ................................................................................4

    B.    Realtime voluntarily dismissed its claims a second time, after Netflix fully briefed a motion to transfer the dispute back to the Delaware court and requested reimbursement of its fees and costs. ..............................................................................7

III.  ARGUMENT ............................................................................................9

    A.    This Court should award fees under 35 U.S.C. § 285, as Netflix prevailed in an exceptional patent infringement case. ...........................9

        1.    Realtime's second voluntary dismissal acts as an adjudication on the merits, making Netflix a prevailing party eligible for a fee award. ...................................................10

        2.    Realtime's litigation misconduct makes this an exceptional case. ..................................................................12

    B.    This Court should exercise its inherent power to award Netflix its fees as a sanction for Realtime's litigation misconduct.................16

    C.    Netflix's requested attorney fees are reasonable. ..............................18

IV.   CONCLUSION .......................................................................................21

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A Metal Source, LLC v. All Metal Sales, Inc.*,
No. 1:14-cv-01020-DAP, 2016 WL 245981 (N.D. Ohio Jan. 21, 2016) ................................................................................................................. 14

*Boyer v. BNSF Rwy. Co.*,
832 F.3d 699 (7th Cir. 2016) .......................................................................... 18

*Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Resources*,
532 U.S. 598 (2001) ........................................................................................ 11

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
79 F. Supp. 3d 1111 (C.D. Cal. 2015) ............................................................ 13

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......................................................................................... 17

*China Healthways Inst., Inc. v. Hsin Ten Enters. USA, Inc.*,
Nos. CV-02-5493 & 02-7520 LGB, 2003 WL 21982477 (C.D. Cal. Mar. 12, 2003) ........................................................................................... 17, 18

*Click-to-Call Techs., LP v. Inegnio, Inc.*,
899 F.3d 1321 (Fed. Cir. 2018) ........................................................................ 5

*Cooter & Gell v. Hartmax Corp.*,
496 U.S. 384 (1990) ........................................................................................ 10

*Criminal Prods., Inc. v. Jenkins*,
No. 2:16-CV-2704 JCM (PAL), 2018 WL 1538862 (D. Nev. Mar. 29, 2018) ...................................................................................................... 10

*CRST Van Expedited, Inc. v. EEOC*,
136 S. Ct. 1642 (2016) .................................................................................... 12

*Drone Techs., Inc. v. Parrot SA*,
No. 2:14-cv-00111-AJS, 2015 WL 4545291 (W.D. Pa. July 21, 2015) ............................................................................................................... 19

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) .......................................................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*First Time Videos, LLC v. Oppold*,
   No. 6:12-cv-1493-Orl-36KRS, 2013 WL 12094410 (M.D. Fla.
   Sept. 16, 2013) .................................................................................................... 11

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ........................................................................................... 13

*Fox v. Vice*,
   563 U.S. 826 (2011) ........................................................................................... 20

*G & G Fire Sprinklers, Inc. v. Bradshaw*,
   156 F.3d 893 (9th Cir. 1998) ............................................................................. 19

*Galitski v. Samsung Telecommc'ns Am., LLC*,
   No. 8:CV-12-00903-CJC, 2012 WL 12830000 (C.D. Cal. Nov. 21,
   2012) ..................................................................................................................... 8

*Goodyear Tire & Rubber Co. v. Haeger*,
   137 S. Ct. 1178 (2017) ....................................................................................... 20

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
   995 F.2d 414 (3d Cir. 1993) .............................................................................. 19

*Hall v. Cole*,
   412 U.S. 1 (1973) ............................................................................................... 17

*Highway Equip. Co., Inc. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006) ......................................................................... 10

*Homeland Housewares, LLC. v. Sorensen Research & Dev. Trust.*,
   581 Fed. Appx. 877 (Fed. Cir. 2014) ................................................................ 18

*John Akridge Co. v. Travelers Cos.*,
   944 F. Supp. 33 (D.D.C. 1996), *aff'd* 1997 WL 411654 (D.C. Cir.
   June 30, 1997) .............................................................................................. 17, 18

*Kilopass Tech., Inc. v. Sidense Corp.*,
   82 F. Supp. 3d 1154 (N.D. Cal. 2015) ............................................................... 18

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Kutten v. Bank of Am., NA*,
   Nos. 4:04-0244 (PAM), 4:06-0937 (PAM), 2008 WL 4838152
   (E.D. Mo. Nov. 6, 2008)..............................................................................17

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
   No. CV 11-03398-R, 2017 WL 1528774 (C.D. Cal. Apr. 10, 2017).................16

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
   811 F.3d 479 (Fed. Cir. 2016) ......................................................................18

*Medison Am., Inc. v. Preferred Med. Sys., LLC*,
   No. 2:05-02390-DKV, 2010 WL 11601462 (W.D. Tenn. Nov. 12,
   2010) .............................................................................................................14

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   726 F.3d 1359 (Fed. Cir. 2013) ....................................................................18

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
   No. CV 13-06787 JEM, 2018 WL 7504404 (C.D. Cal. Dec. 27,
   2018) ........................................................................................................13, 20

*My Health, Inc. v. ALR Techs., Inc.*,
   No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec.
   19, 2017) ..................................................................................................20, 21

*NEXUS Servs., Inc. v. Moran*,
   No. 5:16-cv-00035, 2018 WL 1461750 (W.D. Va. Mar. 23, 2018) ...................11

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   No. C 08-2912 JSW (MEJ), 2008 WL 11383775 (N.D. Cal. Sept.
   29, 2008) ...................................................................................................8, 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) .................................................................................12, 14

*Perdue v. Kenny A. ex. rel. Winn*,
   559 U.S. 542 (2010) ......................................................................................18

*Rasmussen v. Thorne*,
   No. 13-cv-02557-CMA-CBS, 2015 WL 4652781 (D. Colo. Aug. 6,
   2015) .............................................................................................................11

FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Raylon, LLC v. Complus Data Innovations, Inc.*,
    700 F.3d 1361 (Fed. Cir. 2012) ......................................................... 16

*RFR Indus., Inc. v. Century Steps, Inc.*,
    477 F.3d 1348 (Fed. Cir. 2007) ......................................................... 10

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    866 F.3d 1330 (Fed. Cir. 2017) ......................................................... 14

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot.
    Servs., Inc.*,
    858 F.3d 1383 (Fed. Cir. 2017) ......................................................... 13

*Sanai v. Sanai*,
    2005 WL 1593488 (W.D. Wash. July 1, 2005) .................................... 18

*Shannon v. GfK Custom Research LLC*,
    No. 4:13-CV-682 CAS, 2013 WL 4829220 (E.D. Mo. Sept. 10,
    2013) ................................................................................................. 10

*Shipping & Transit, LLC v. Hall Enters., Inc.*,
    No. CV 16-06535-AG-AFM, 2017 WL 3485782 (C.D. Cal. July 5,
    2017) ................................................................................................. 14

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
    No. SACV 17-00660 JVS (JCGx), 2018 WL 6016149 (C.D. Cal.
    Aug. 13, 2018) ................................................................................... 20

*Telepharmacy Sols., Inc. v. Pickpoint Corp.*,
    238 F. Supp. 2d 741 (E.D. Va. 2003) ................................................. 16

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018) ......................................................... 15

**STATUTES**

28 U.S.C. § 1400 .................................................................................. 13

35 U.S.C. § 101 ............................................................................. *passim*

35 U.S.C. § 285 ............................................................................. *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

35 U.S.C. § 315(b) ....................................................................................... 5, 20

**OTHER AUTHORITIES**

Changes to Implement Inter Partes Review Proceedings, Post-Grant
    Review Proceedings, and Transitional Program for Covered
    Business Method Patents, 77 F. Reg. 48680-01 (Aug. 14, 2012) ........................ 5

Fed. R. Civ. P. 41 .................................................................................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 3, 2020, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 9D of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants Netflix, Inc. and Netflix Streaming Services, Inc. (collectively, "Netflix"), will, and hereby do, move under 35 U.S.C. § 285 and the Court's inherent powers for an order directing Plaintiff Realtime Adaptive Streaming LLC ("Realtime") to pay Netflix's attorney fees in this action, in the related Case No. 2:19-cv-06359, in Realtime's previously-filed case against Netflix in the District of Delaware, *Realtime Adaptive Streaming LLC v. Netflix, Inc. et al.*, Case No. 1:17-cv-01692 (D. Del.), and in the *inter partes* review of the patents at issue in this dispute before the Patent Trial and Appeal Board.

Realtime sued Netflix in Delaware in November 2017, asserting many of the same causes of action it asserted here. The Magistrate Judge recommended dismissing claims based on U.S. Patent Nos. 8,934,535; 9,769,477; 9,762,907; and 7,386,046, because those patents claimed ineligible subject matter under 35 U.S.C. § 101. Realtime objected and months later sought leave to amend its complaint. Then, before the court ruled on these matters—and, specifically, before the court adopted the recommendation to invalidate four of Realtime's patents—Realtime voluntarily dismissed the case. Realtime then filed two cases in this district asserting the same patents. It voluntarily dismissed those actions, too, but only after Netflix had moved to transfer and for reimbursement of costs specific to the Delaware case under Rule 41(d).

Netflix incurred substantial fees in defending these two actions and seeks full reimbursement of them, as set forth in the declarations that accompany this motion. Netflix bases this motion on this Notice of Motion, the Memorandum of Points and Authorities, the supporting declarations of J. David Hadden and Isaac Peterson, all exhibits thereto, all judicially noticeable facts, all documents, pleadings and records

in the Court's file, and on such other oral and documentary evidence and argument as may be presented to the Court at or before the time of hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 9, 2019.

Dated:  December 16, 2019             FENWICK & WEST LLP


By:   */s/ J. David Hadden*
      J. David Hadden
      Attorneys for Defendants
      NETFLIX, INC. and NETFLIX
      STREAMING SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This dispute was a near carbon copy of one that Realtime brought against Netflix in the District of Delaware two years ago.  Realtime dismissed its Delaware case after 20 months of litigation.  It did so after Netflix briefed multiple motions and filed eight petitions for *inter partes* review of the asserted patents.  It also did so only after the magistrate judge recommended invalidating four Realtime patents, and, more telling, mere hours after Netflix gave notice that the district judge had, in a parallel case, invalidated several other Realtime patents similar to those asserted against Netflix.  The very next day, Realtime re-filed the dispute as two separate lawsuits in this district, where this Court had ruled more favorably for Realtime than the Delaware court, and even though Realtime previously opposed a transfer from Delaware to California.

When Netflix provided notice that it would seek its costs and fees incurred in Delaware and a transfer back to that court, Realtime amended its complaints to drop one patent and swap another with a related patent, in a transparent attempt to introduce a distinction between the Delaware and California disputes.  It then filed a groundless opposition to the transfer motion that mischaracterized Realtime's motivation for changing forums.  Then, on the eve of the motion to transfer hearing, and after Netflix had once again expended significant time and resources in its defense, Realtime dismissed the cases.

This Court should award Netflix its reasonable attorney fees.  35 U.S.C. § 285 permits an award of attorney fees in exceptional patent infringement cases, and the Court has the inherent power to sanction litigation misconduct.  Realtime's conduct meets both standards.  Moving the case to this Court to seek a more favorable ruling is an act of forum shopping that disrespects the work of the Delaware court and supports a fee award standing alone.  But that act does *not* stand alone here: it is aggravated by Realtime's previous fight to keep the case in Delaware, its failure to

FENWICK & WEST LLP
ATTORNEYS AT LAW

be candid with this Court in describing its reasons for dismissing the Delaware case, and its dismissal of the entire dispute with transfer and costs motions pending. Moreover, Realtime's claims were unreasonably weak from the beginning. The Delaware magistrate judge recommended holding four asserted patents invalid (this Court has agreed in part so far as to one of those, and will consider two more at summary judgment), and the PTAB instituted review of all patents asserted in Delaware, ruling that it was likely to find them invalid. This was a case that Realtime not only litigated unreasonably, but that it should not have brought in the first place. In short, Realtime's conduct here is exactly what § 285 and the Court's power to sanction are meant to deter. The Court should grant the motion.

## II.    FACTUAL BACKGROUND

### A.    Realtime filed suit against Netflix in Delaware only to voluntarily dismiss the case when an adverse ruling was imminent and re-file the same claims in this Court the very next day.

Realtime filed its complaint in the Delaware case on November 21, 2017, asserting claims for infringement of six patents: U.S. Patent Nos. 7,386,046 (the "'046 Patent"), 8,634,462 (the "'462 Patent"), 8,934,535 (the "'535 Patent"), 9,578,298 (the "'298 Patent"), 9,762,907 (the "'907 Patent"), and 9,769,477 (the "'477 Patent"). (*See* Declaration of J. David Hadden in Support of Defendants' Motion for Award of Attorney Fees ("Hadden Decl."), Ex. A.)

The case against Netflix was part of Realtime's nationwide litigation campaign against a disparate group of technology companies spanning five federal judicial districts around the country. (*Id.*, Ex. B (JPML Order Denying Transfer) at Schedule A.) Realtime originally tried to centralize these cases in either the District of Colorado or the Eastern District of Texas. (*Id.*, Ex. B at 1.) Netflix and two dozen other defendants opposed centralization because, among other things, the cases involved a wide variety of accused products that Realtime had accused of infringing separate groupings of its patents, and thus did not overlap substantially. (*Id.*, Ex. B

Fenwick & West LLP
Attorneys at Law

at 2.)  The Judicial Panel on Multidistrict Litigation denied the motion to centralize on August 1, 2018, finding no merit to Realtime's request for centralization.  (*Id.*)

As part of its defense, Netflix sought *inter partes* review of the patents asserted in Delaware.  (Peterson Decl., ¶ 3.)  Congress created IPRs "to create a timely, cost-effective alternative to litigation."  *See* Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 F. Reg. 48680-01 (Aug. 14, 2012) (codified at 37 CFR 42).  But 35 U.S.C. § 315(b) places a one-year time bar on petitioning for IPR after service of a complaint alleging patent infringement, which currently applies regardless of any subsequent dismissal. *Click-to-Call Techs., LP v. Inegnio, Inc.*, 899 F.3d 1321, 1332 (Fed. Cir. 2018) (certiorari granted in part sub nom *Dex Media, Inc. v. Click-To-Call Techs., LP*).  Netflix incurred significant expense preparing these petitions, and the PTAB instituted review on all of the challenged patents.  (*Id.*, Exs. Z-1-Z-8.)

Netflix moved to transfer Realtime's case against it in Delaware to the Northern District of California, where Netflix has its principal place of business, keeps the bulk of its relevant evidence, and where the majority of Netflix's relevant witnesses work.   (Hadden Decl., Ex. D. (Netflix Transfer Motion) at 10-13.) Realtime opposed, arguing that it had "no ties to California," and that transfer to California "would lead to greater expense, additional travel, and more work for Realtime," even though Realtime had no ties to Delaware.  (*Id*., Ex. E (RT Opp. to Transfer Motion) at 9–10.)  The magistrate judge recommended denying transfer— giving weight to Realtime's choice to file in Delaware—which recommendation the district judge later adopted.  (*Id*., Exs. G, H. (R&R Denying Transfer and Order Adopting R&R).)

Netflix also moved to dismiss the Delaware case because (1) the '535, '046, '907, and '477 patents (the "Fallon patents") claimed ineligible subject matter under 35 U.S.C. § 101; and (2) Realtime failed to state a claim for infringement of the

remaining two patents (the '298 patent and the '462 patent). (Hadden Decl., Ex. C. (Netflix Motion to Dismiss) at 6-20.) The magistrate judge heard oral argument on October 2, 2018. (*Id.*, Ex. F (Oct. 2, 2018 Hearing Transcript).) On December 12, 2018, the magistrate judge issued a report recommending the district court grant the motion as to the Fallon patents. (*Id.*, Ex. I. (R&R Recommending Dismissal in Part) at 20, 36.) Realtime objected and Netflix responded to those objections. (*Id.*, Exs. J, K.) Months later, while the objections were still pending, Realtime moved for leave to amend its complaint to allege facts in hopes of avoiding a Rule 12 dismissal, which Netflix opposed. (*Id.*, Ex. L (RT Motion for Leave to Amend the Complaint), Ex. M (Netflix Opposition).)

On July 19, 2019, the district judge ruled in a parallel case that five patents owned by Realtime's parent company were ineligible under § 101. (*Id.*, Ex. N.) Realtime had relied on those patents to argue for the eligibility of the patents asserted against Netflix. (*Id.*, Ex. L (RT Motion for Leave to Amend the Complaint) at 5-6.) On July 22, 2019, Netflix submitted the order as further support to show the futility of Realtime's proposed complaint amendments. (*Id.*, Exs. N-O.)

Later that day, Realtime voluntarily dismissed the Delaware case under Fed. R. Civ. P. 41(a)(1)(A)(i).[1]   (*Id.*, Ex. P.) The very next day, Realtime filed new complaints in California, alleging infringement of the same patents asserted in Delaware by the same Netflix products and services.[2]

---

[1] Realtime represented in its dismissal notice that each party would bear its own costs, but Netflix never agreed to forego recovery of its fees or costs and Judge Connolly did not issue any order requiring as much. (*Id.*, Ex. P.)

[2] U.S. Patent No. 8,634,462 re-issued as U.S. Patent No. RE46,777 on April 3, 2018, with minor changes. Realtime asserted RE46,777 in Case No. 2:19-cv-06359, also before this Court.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      Realtime voluntarily dismissed its claims a second time, after Netflix fully briefed a motion to transfer the dispute back to the Delaware court and requested reimbursement of its fees and costs.**

Six weeks after the complaints were filed in this Court, but before Realtime served them, Netflix notified Realtime that it would request transfer back to Delaware and reimbursement of its costs under Rule 41(d).  The parties conferred on these motions on September 12, 2019.  A little over a week later, on September 20, 2019, Realtime amended both complaints.  Its amendments reduced the number of codecs it accused of infringing the '777 patent.  It also shuffled the asserted patents, dropping the '298 patent from one case, and in the other replacing the '907 patent with the '879 patent from the same family.

The following chart compares the asserted patents in the Delaware and California cases:

| Delaware | California – original complaints | |
|---|---|---|
| '046 Patent<br>'535 Patent<br>'477 Patent<br>'907 Patent<br>'462 Patent<br>'298 Patent | '046 Patent<br>'535 Patent<br>'477 Patent<br>'907 Patent | '777 Patent (reissue of '462)<br>'298 Patent |
| | **California – amendments after Netflix made its costs request** | |
| | '046 Patent<br>'535 Patent<br>'477 Patent<br>Dropped '907 Patent<br>Added '879 Patent from same family[3] | '777 Patent (reissue of '462)<br>Dropped '298 Patent |

Netflix filed its motions on October 7, 2019.  (Dkts. 15 & 16.)  Realtime

---

[3] The addition of the '879 patent did not meaningfully change the dispute.  That patent is a continuation of the '046 patent and has the same figures and specification.  The independent claims (1 and 10) of the '879 patent are a near copy of claim 1 of the '535 patent.  (*See* Hadden Decl., Ex. X.)  Realtime also accuses the same "instrumentalities" of infringing the '879 patent as it does for the other Fallon patents.

opposed both. (Dkts. 25 & 26.)  Realtime's oppositions were meritless.  On transfer, it had already argued to the Delaware court that the convenience of witnesses and location of evidence for this dispute favored Delaware, and secured a ruling in its favor.  Realtime was thus judicially estopped from arguing against its past positions. (*See* Dkt. at 16 at 10-12.)  Furthermore, estoppel aside, Realtime could not identify any meaningful connection between its cases and this district.  No party is headquartered here, and Realtime did not identify a *single* relevant witness or any evidence located in the district.  (*See* Dkt. 25 at 11-13.)

Instead, Realtime argued that the Court should defer to Realtime's choice of venue. (Dkt. 25 at 9.)  But this argument, too, was baseless.  First, it wholly ignored the fact that Realtime had filed the same claims in Delaware first.  Second, Realtime "chose" to re-file its claims here to avoid an invalidity determination by the court it chose originally.  Under well-established law, that forum shopping meant that Realtime's choice of venue was entitled to *no* deference.  *See, e.g.*, *Galitski v. Samsung Telecommc'ns Am., LLC*, No. 8:CV-12-00903-CJC (JPRx), 2012 WL 12830000, at *2-3 (C.D. Cal. Nov. 21, 2012).

In its opposition brief, Realtime did not expressly deny that the Delaware court ruling motivated Realtime to switch forums, but it was not fully candid with this Court, either.  It pressed a narrative that it had re-filed in California because it was dissatisfied with the speed at which the district judge in Delaware ruled in the case. (Dkt. 25 at 2-3.)  That explanation made no sense:  Realtime had never requested a scheduling conference or any other hearing from Netflix or the Delaware court; starting the case over from scratch in California caused additional delay, not a reduction of it; and Realtime waited more than two months to serve the California complaints, doing so only after Netflix moved to transfer. (*See* Dkt. 24.)  Moreover, switching forums due to "delays" is ***still forum shopping***. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, No. C 08-2912 JSW (MEJ), 2008 WL 11383775, at *2 (N.D. Cal. Sept. 29, 2008) (selecting a forum based on speed of docket is forum

FENWICK & WEST LLP
ATTORNEYS AT LAW

shopping), report and recommendation adopted, No. C 08-02912 JSW, 2008 WL 11383776 (N.D. Cal. Nov. 6, 2008).  Under any view of the facts, Realtime's choice to move its lawsuit to California was entitled to no deference, and Realtime therefore lacked reasonable grounds to oppose transfer back to Delaware.

On November 14, 2019, just days before this Court was set to hear oral argument regarding the motion to transfer, Realtime dismissed both California cases. (Dkt. 30.)

## III.   ARGUMENT

### A.   This Court should award fees under 35 U.S.C. § 285, as Netflix prevailed in an exceptional patent infringement case.

The Court should award Netflix the attorney fees it reasonably incurred in defending Realtime's claims against it.  In a patent infringement case, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Netflix is the prevailing party here.  Realtime's second dismissal of the same claims "operates as an adjudication on the merits" and is with prejudice—no different in effect than if this Court had rendered a final judgment for Netflix after trial.  *See* Fed. R. Civ. P. 41(a)(1)(B).  Moreover, this is without question an exceptional case.  Realtime filed a host of lawsuits against unrelated defendants and conducted a nationwide forum shopping-spree.  It waged this campaign with weak patents, which are both likely ineligible and likely invalid.  It opposed transferring its case against Netflix out of Delaware—until it was clear that the Delaware court was about to rule against it.  Realtime then dismissed the case, preempting that order, and refiled in this Court, where it had achieved more favorable results.[4]  It has now

---

[4] While the Delaware case was pending, this Court had considered a similar motion to dismiss under § 101, but had resolved it more favorably to Realtime than the magistrate judge in Delaware. *See Realtime Adaptive Streaming LLC v. Google LLC*, No. 2:18-cv-03629, Dkt. 36 (C.D. Cal. Oct. 25, 2018).  The Court held on the pleadings that claims 15-30 of the '535 patent were directed to patent-ineligible subject matter (*id*. at 10-11), but it denied the motion without prejudice as to '046

FENWICK & WEST LLP
ATTORNEYS AT LAW

dismissed this case in an apparent attempt to avoid either a reckoning before the Delaware court or a costs award from this one.  Realtime's shenanigans are an abuse of the Federal Judicial system that have wasted both private and public resource. They are exactly the type of conduct that Section 285 is meant to deter.

**1.    Realtime's second voluntary dismissal acts as an adjudication on the merits, making Netflix a prevailing party eligible for a fee award.**

The first step in determining whether to award fees is to determine whether the party seeking reimbursement has prevailed in the litigation.  *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).  A first voluntary dismissal ordinarily does not make the defendant the prevailing party because the plaintiff is free to refile its claims.  Fed. R. Civ. P. 41(a)(1)(B); *see, e.g.*, *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007).  But a second voluntary dismissal is a dismissal with prejudice that resolves the case in the defendant's favor:

> [I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Fed. R. Civ. P. 41(a)(1)(B); *see also Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 394 (1990).  Here, Realtime voluntarily dismissed the same claims twice, in Delaware and in this Court.  (Ex. P; Dkt. 30.)[5]  Because this dismissal with prejudice provided Netflix with total relief, barring Realtime from relitigating any of the twice-dismissed claims, Netflix is a prevailing party eligible for fees.  *See Criminal Prods.,*

---

patent and '477 patent (*id*. at 8).

[5] The only patent for which Realtime still may have a potential cause of action is the '879 patent, as Realtime did not assert that patent in the original Delaware action. *See* Fed. R. Civ. P. 41(a)(1)(B); *Shannon v. GfK Custom Research LLC*, No. 4:13-CV-682 CAS, 2013 WL 4829220, at *5 (E.D. Mo. Sept. 10, 2013) (second voluntary dismissal acted as an adjudication on the merits of all claims brought in the second action, including those dropped via amended complaint prior to dismissal).

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Inc. v. Jenkins*, No. 2:16-CV-2704 JCM (PAL), 2018 WL 1538862, at *4-5 (D. Nev. Mar. 29, 2018) *appeal filed* ("plaintiff's voluntary dismissal of defendant makes defendant a 'prevailing party' for purposes of the applicable fee-shifting statute"); *see also NEXUS Servs., Inc. v. Moran*, No. 5:16-cv-00035, 2018 WL 1461750, at *14 (W.D. Va. Mar. 23, 2018) (voluntary dismissal with prejudice made defendant prevailing party) (citing *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 166 (2d Cir. 2014)); *Rasmussen v. Thorne*, No. 13-cv-02557-CMA-CBS, 2015 WL 4652781, at *3 (D. Colo. Aug. 6, 2015) (same).

Although at least one court from another district has held that a second voluntary dismissal does not render the defendant a prevailing party, its reasoning is unsound. *See First Time Videos, LLC v. Oppold*, No. 6:12-cv-1493-Orl-36KRS, 2013 WL 12094410, at *5 (M.D. Fla. Sept. 16, 2013). Specifically, it relied on a reading of the Supreme Court's opinion in *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001), that the Supreme Court itself has since distinguished.

*Buckhannon* requires that some judicial act occur for a party to prevail and thus become eligible for a fee award. Based on this holding, the *First Time* court concluded the defendant before it had not prevailed following a second voluntary dismissal, because that dismissal did not require the court's involvement. 2013 WL 12094410, at *5. *Buckhannon*, however, concerned a *plaintiff's* attempt to recover fees based on the "catalyst" theory, *i.e.*, an argument that even though the plaintiff had not prevailed on its claims, simply bringing the lawsuit had inspired the defendant to undertake voluntary changes to its conduct, thereby achieving the plaintiff's objective. 532 U.S. at 601. The Supreme Court rejected that theory and required an act with "judicial *imprimatur*"—in other words, the plaintiff must prevail in the litigation itself. *Id*. at 605. The Supreme Court has since explained that this reasoning is largely inapplicable to defendants, who can prevail when "the plaintiff's challenge is rebuffed":

FENWICK & WEST LLP
ATTORNEYS AT LAW

Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.

*CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016).[6] A secondary voluntary dismissal is a dismissal with prejudice, no different in its preclusive effect than if the parties had litigated to final judgment. After *CRST Van*, this is sufficient to make the defendant a prevailing party eligible for fees.

### 2. Realtime's litigation misconduct makes this an exceptional case.

The district court has discretion to deem a case exceptional and award fees based on the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* Relevant factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular

---

[6] *CRST Van* further emphasized that a less restrictive interpretation of "prevailing party" for defendants was necessary to avoid situations where "significant attorney time and expenditure may have gone into contesting the claim" but defendants were still precluded from obtaining fees pursuant to a fee-shifting statute because the nature of defendants' relief did not easily reflect a definition of prevailing party crafted to identify successful plaintiffs. *Id.* at 1653. "Congress could not have intended to bar defendants from obtaining attorney's fees . . . on the basis that, although the litigation was resolved in their favor, they were nonetheless not prevailing parties." *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (adopting factors considered in Copyright Act fee awards from *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). In sum, "Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.,* 79 F. Supp. 3d 1111, 1114 (C.D. Cal. 2015).

This is an exceptional case: Realtime's nearly identical complaints in Delaware and California assert patents that are invalid on multiple grounds. (*See* Hadden Decl. Ex. I (Delaware Report & Recommendation); Peterson Decl. Exs. Z-1-Z-8 (PTAB Decisions Instituting IPR)). Realtime either knew or should have known of the weakness of these claims, and should never have asserted them, let alone in serial and wasteful lawsuits. *See, e.g.*, *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1391 (Fed. Cir. 2017) (Mayer, J. concurring) (where patentee filed claims that were invalid on their face under § 101, noting "[t]his suit should never have been filed, and [the defendant] deserves to be fully compensated for the significant attorneys' fees it has incurred."). Indeed, Realtime all but conceded it had no viable claim for infringement of the '535 patent when it voluntarily canceled claims of that patent in an IPR proceeding in January 2019. (*See* Peterson Decl., Ex. Z-7.) Yet it re-asserted this patent in this action. (*See* Dkt. 1.)

Realtime's attempt to forum shop once it expected an adverse invalidity ruling also makes this case exceptional.[7] *See Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787 JEM, 2018 WL 7504404, at *6 (C.D. Cal. Dec. 27, 2018) (finding case exceptional where plaintiff voluntarily dismissed claim "in an attempt to avoid

---

[7] Realtime had originally attempted to shop for a district it viewed as favorable by moving to centralize in the District of Colorado or the Eastern District of Texas. This was, in effect, an end-run around the limits in the patent venue statute, 28 U.S.C. § 1400, as several defendants were not otherwise subject to suit in those districts. (*See* Hadden Decl. Ex. B.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

a[n][adverse] final judgment"); *see also, e.g.*, *Shipping & Transit, LLC v. Hall Enters., Inc.*, No. CV 16-06535-AG-AFM, 2017 WL 3485782, at *2-3 (C.D. Cal. July 5, 2017) (case was exceptional where non-practicing entity had a practice of voluntarily dismissing lawsuits when patent validity was challenged).  There is no real question that Realtime's re-filing of its claims here was forum shopping.  *See Medison Am.*, *Inc. v. Preferred Med. Sys., LLC*, No. 2:05-02390-DKV, 2010 WL 11601462, at *3-4 (W.D. Tenn. Nov. 12, 2010) (finding identical actions filed in separate courts were a "brazen attempt to forum-shop"); *A Metal Source, LLC v. All Metal Sales, Inc.*, No. 1:14-cv-01020-DAP, 2016 WL 245981, at *12-13 (N.D. Ohio Jan. 21, 2016) (finding Lanham Act case exceptional, noting "[i]t is impermissible forum shopping to bring claims based on the same facts in different lawsuits before two courts and then to go back and forth between those two courts depending on one's sense of how the wind is blowing.").[8]  Realtime previously opposed transfer out of Delaware.  It dismissed only after the magistrate judge recommended invalidating four Realtime patents, and mere hours after Netflix gave notice that the district judge had just invalidated several other patents similar to those asserted against Netflix. (*Compare* Dkt. 16-17 *with* Dkt. 16-18.)  The court it retreated to—this Court—had also given Realtime a more favorable ruling on several issues considered by the Delaware court.

Realtime's conduct during the cases in this Court also makes them exceptional.  It walked away from its claims a second time after forcing Netflix to fully brief motions to stay and to transfer.  Realtime's opposition to transfer was itself unreasonable and based on an explanation for its conduct in Delaware—"delays" in receiving rulings there—that was not credible.  (Dkt. 25 at 3, 8, 10.)  In fact,

---

[8] The text of the attorney fees provisions of the Patent Act, 35 U.S.C. § 285, and the Lanham Act, 15 U.S.C. § 1117, are "identical" and should be interpreted accordingly. *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1335 (Fed. Cir. 2017) (citing *Octane*, 572 U.S. at 553-55).

NETFLIX'S MOTION FOR ATTORNEY FEES; MPA IN SUPPORT                    14                    Case No. 2:19-cv-06361-GW(JCx)

Realtime's behavior reveals that its representations to this Court about its Delaware dismissal were false. Realtime could have voluntarily dismissed the Delaware case at any point during the two-year period it was pending. Instead, it opposed transfer and a motion to dismiss, and waited while the Delaware court invested time in resolving those motions and Netflix filed IPR petitions. Realtime never asked the Delaware court for a scheduling conference. It did not raise the issue of purported "case delays" at the hearing on the motions to transfer and to dismiss. Realtime also filed objections to the report and recommendation to salvage its patents in Delaware, without any apparent concern for delay. And it waited almost nine months after that hearing—six months after the magistrate judge recommended invalidating its patents—before seeking leave to amend its complaint. (*See* Dkts. 16-11 & 16-14.) Both the motion and objections required Netflix to prepare briefs in response.

Finally, nine months after oral argument on the motions to dismiss, six months after briefing on the objections was complete, but less than a month after it moved for leave to amend, only three days after the same district judge held five similar Realtime patents ineligible under § 101 in a different case, and *hours* after Netflix filed a noted of supplemental authority noting its relevance, Realtime dismissed. (*See id.*, Dkts. 16-14, 16-16, 16-17, 16-18.) In other words, Realtime waited and waited, and was still pursuing the case in Delaware, until the same district judge began invalidating its patents. (*See id.*)

Then, after jumping to this Court, Realtime waited over two months to serve Netflix, doing so only after Netflix filed its transfer motion. (*See* Dkt. 24.) Realtime's behavior was again totally inconsistent with a party seeking a speedy resolution. (Dkts. 1, 16.) All of these facts support the conclusion that Realtime fled Delaware to avoid an invalidity determination, which, if affirmed, would have precluded Realtime from asserting those patents in any future lawsuit. *See XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (prior determinations of patent invalidity may be asserted defensively by non-parties). It then

Fenwick & West LLP
Attorneys at Law

FENWICK & WEST LLP
ATTORNEYS AT LAW

mischaracterized its behavior to this Court in an effort to get it to keep the case. *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. CV 11-03398-R, 2017 WL 1528774, at \*1 (C.D. Cal. Apr. 10, 2017) (Real, J.) (case was exceptional where plaintiff attempted to manipulate venue).[9]

Congress had two objectives in enacting Section 285: (1) to provide a deterrent to frivolous or unnecessary patent litigation, and (2) to compensate parties injured by such litigation. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372-73 (Fed. Cir. 2012). Realtime's attempt to game the federal courts by suing, folding, running, suing, and folding again, has done nothing but mock the efforts of the Delaware Court and squander the resources of the courts and Netflix. Netflix is not the only target of these meritless claims. Realtime filed similar claims against more than two-dozen other defendants, and without an effective deterrent, will no doubt continue doing so in the future because its business model relies on such large-scale litigation campaigns. (*See, e.g.*, Hadden Decl., Ex. B.) The Court should award fees to compensate Netflix for the expense it has incurred during over two years of litigation *and* to deter Realtime and others from engaging in the wasteful conduct that occurred here.

**B. This Court should exercise its inherent power to award Netflix its fees as a sanction for Realtime's litigation misconduct.**

As an alternative ground for its decision, this Court should also order Realtime

---

[9] Even accepting Realtime's "delay" explanation, its choice of forum still merits no deference. (*See* Opp. at 3.) The law is clear that this behavior is still forum shopping. *See Nuance Commc'ns*, 2008 WL 11383775, at \*2 ("[W]hen docket considerations are the primary reason a party has initiated an action in this court, as may be the situation in the instant case, the interest of justice is not served." (*quoting Original Creatine Patent Co. v. Met–RX USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005))); *Telepharmacy Sols., Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) ("[D]ocket considerations are the primary reason that [plaintiff] seeks to be heard here. The interests of justice are not served by such blatant forum shopping.").

to pay Netflix's attorney fees under its inherent power. "Federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole,* 412 U.S. 1, 4-5 (1973). Sanctions under the court's inherent power serve "a dual purpose: first, to vindicate judicial authority, and second, to make the prevailing party whole for expenses caused by its opponent's obstinacy." *China Healthways Inst., Inc. v. Hsin Ten Enters. USA, Inc.*, Nos. CV-02-5493 & 02-7520 LGB (JWJx), 2003 WL 21982477, at \*4 (C.D. Cal. Mar. 12, 2003). Awarding fees is appropriate where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The Court also has the power to sanction a party for misconduct that occurred before other courts. *See id. at* 57.

The same conduct that supports an award under § 285 subjects Realtime to sanction under the Court's inherent power. Re-filing an action to avoid an adverse ruling is sanctionable conduct. *See John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996), *aff'd* 1997 WL 411654 (D.C. Cir. June 30, 1997); *Kutten v. Bank of Am., NA*, Nos. 4:04-0244 (PAM), 4:06-0937 (PAM), 2008 WL 4838152, at \*4 (E.D. Mo. Nov. 6, 2008) (sanctioning plaintiff under court's inherent power for a "pattern of forum shopping and vexatious litigation," including voluntarily dismissing action to avoid "unfavorable rulings" and then refiling). The Court need not even reach a conclusion regarding Realtime's subjective motivations, as sanctions are available if a party's objective conduct is "tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

*John Akridge* is instructive. There, the plaintiff lost a motion to dismiss in federal court and, with its appeal pending, re-filed the same claims in state court to circumvent the federal court's dismissal. 994 F.Supp. at 34. The plaintiff then opposed removal and transfer because of the "knowledge that once the case made its way back to [the original court], it would be immediately dismissed." *Id.* The court held that this was bad faith conduct subject to sanction. *Id.* Other courts, including

in this district, have also sanctioned parties for simpler acts of forum shopping than occurred here. *See Boyer v. BNSF Rwy. Co.*, 832 F.3d 699, 700-02 (7th Cir. 2016) (affirming sanctions imposed under court's inherent power for plaintiff's forum shopping); *China Healthways*, 2003 WL 21982477, at *13 (sanctioning defendant under the court's inherent power for filing an anticipatory suit in an inconvenient forum); *cf. Sanai v. Sanai*, No. C02-2165Z, 2005 WL 1593488, at *6 (W.D. Wash. July 1, 2005) (awarding sanctions under Section 1927 and noting that "Plaintiffs' continued attempts to secure a different federal district judge have been improper and justify the imposition of sanctions"). The Court can and should alternatively award fees based on its inherent power.

### C.   Netflix's requested attorney fees are reasonable.

The fees Netflix requests are reasonable. The amount and calculation of attorney fees under Section 285 is committed to the discretion of the district court. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016); *see also Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 558 (2010). But there is "nothing in the legislative history or applicable case law to suggest that . . . courts should balk at awarding full fees." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015). Indeed, once the court has determined a case is exceptional in light of the totality of the circumstances, it may award of the full cost of defense and need not apportion fees for each act of "exceptional" conduct. *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013) (pervasive litigation misconduct); *Homeland Housewares, LLC. v. Sorensen Research & Dev. Trust.*, 581 Fed. Appx. 877, 881 (Fed. Cir. 2014) (rejecting argument that district court should have limited fee award to the costs incurred in responding to specific acts of litigation misconduct). Similarly, full fees are appropriate for an award under the Court's inherent powers. *See John Akridge*, 944 F. Supp. at 34-35.

Netflix seeks the attorney fees it reasonably incurred over the twenty months spent defending the Delaware case, the four months defending the California cases,

FENWICK & WEST LLP
ATTORNEYS AT LAW

and for its eight IPRs, which Netflix brought before the one-year bar as a more efficient avenue for testing the patents' validity. To allow for easier review by the Court, these totals are more fully described in the declarations accompanying the motion, but they include:

- $302,431.80 for work by Winston & Strawn LLP for investigating validity and infringement defenses, briefing on the motion to dismiss the Delaware Action, the opposition to the motion to consolidate before JPML, and the motion to transfer the Delaware case to the Northern District of California. (*See* Peterson Decl. at ¶¶ 10, 11, 14.)

- $20,423.50 for work by Morris Nichols Arsht & Tunnell for its work as local counsel in the Delaware case. (*Id*. at ¶¶ 12-14.)

- $245,418.75 for work by Fenwick & West LLP in the Delaware case, including investigating validity and infringement defenses, preparing for and arguing the motion to dismiss and motion to transfer, opposing Realtime's objections to the report recommending invalidation of the Fallon patents, and in opposing Realtime's motion for leave to amend its complaint. *See* (Hadden Decl. at ¶¶ 27-30.) District courts have held that Section 285 fees may be awarded for work performed in related cases. *Drone Techs., Inc. v. Parrot SA*, No. 2:14-cv-00111-AJS, 2015 WL 4545291, at *10-11 (W.D. Pa. July 21, 2015) (Report and Recommendation) *adopted* 2015 WL 4550241, *vacated on other grounds* 838 F.3d 1283 (Fed. Cir. 2016) (awarding fees for related state litigation). This is consistent with decisions of the Courts of Appeal holding that fees incurred in a related action between the same parties may be awarded under other federal fee-shifting statutes. *G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 908 (9th Cir. 1998) *vacated on other grounds*, 526 U.S. 1061 (1999); *see also Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) ("there is no blanket legal impediment to including time spent in another litigation in a fee award").

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

- $190,110.00 for work by Fenwick & West LLP in the California cases in moving to transfer the cases back to the District of Delaware, moving for costs and fees under Rule 41(d), and related case management. Netflix also requests an estimated $70,000 for fees incurred in preparing this motion and the reply brief and appearing at the hearing. (*Id.* at ¶¶ 31-33.)

- An estimated $1,740,000 in fees and $430,000 in potentially recoverable expenses in the IPR proceedings. Netflix filed IPR proceedings during the fall of 2018. Netflix waited to file its IPR petitions in the hope that the Delaware court would resolve Realtime's claims. But with the one-year statutory bar approaching and no resolution, Netflix filed IPR petitions to preserve its rights to present invalidity issues to the PTAB. *See* 35 U.S.C. § 315(b). These proceedings were instituted in early 2019. (*See* Peterson Decl., Exs. Z-1-Z-8.) Under § 285, the Court can award attorney fees incurred in IPRs initiated by patent defendants, because the IPR petitions would not have been filed but for the underlying litigation. *Munchkin*, 2018 WL 7504404, at *7 ("But for the filing of the patent infringement claim in this case, LNC would not have incurred attorneys' fees and costs for the IPR[.]"); *My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *6 (E.D. Tex. Dec. 19, 2017) (awarding fees and expenses for work on a related IPR petition because "defendants never would have sought IPR if they had not been sued for allegedly infringing the '985 patent").[10]

---

[10] Some district courts have denied fees and expenses for work performed in related IPR proceedings where such proceedings did not resolve the litigation. *See, e.g.*, *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV 17-00660 JVS (JCGx), 2018 WL 6016149, at *3 (C.D. Cal. Aug. 13, 2018) (denying IPR-related fees because IPRs had not yet been instituted and were therefore unnecessary to the district court's non-infringement ruling). But this is an incorrect standard. Attorney fee awards are not limited to the specific tasks or issues that caused a party to prevail. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (adopting a "but for" standard for attorney fees awards); *Fox v. Vice*, 563 U.S. 826, 836 (2011)

Numerous courts have held that the rates of these counsel are reasonable for similar work.  (*See* Peterson Decl. ¶ 7-9; Hadden Decl. ¶¶ 25-26.)

**IV.     CONCLUSION**

For the foregoing reasons, Netflix respectfully requests that the Court grant its motion for attorney fees.

Dated:  December 16, 2019                    FENWICK & WEST LLP


By:   */s/ J. David Hadden*
         J. David Hadden
         Attorneys for Defendants
         NETFLIX, INC. and NETFLIX
         STREAMING SERVICES, INC.

---

(same).  Indeed, here such a rule would frustrate the deterrent function of Section 285 by letting plaintiffs off the hook for the significant expense of IPR proceedings that are a predictable result of the filing of a meritless patent case. *See My Health*, 2017 WL 6512221, at \*6 (plaintiff should have known defendants would "necessarily" seek to invalidate the asserted patent through IPR proceedings).

FENWICK & WEST LLP
ATTORNEYS AT LAW