RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff*
*REALTIME ADAPTIVE STREAMING LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING, LLC,<br><br>        Plaintiff,<br><br>     v.<br><br>NETFLIX, INC. and NETFLIX STREAMING SERVICES, INC.,<br><br>        Defendants. | Case No. 2:19-cv-06361-GW(JCx)<br><br>**REALTIME ADAPTIVE STREAMING, LLC'S OPPOSITION TO NEFTLIX'S MOTION FOR ATTORNEYS' FEES**<br><br>DATE: February 3, 2020<br>TIME: 8:30 A.M.<br>JUDGE: Hon. George H. Wu |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    RELEVANT FACTS ............................................................................ 3

       A.     The Delaware Action ................................................................. 3

       B.     This Case ................................................................................... 4

       C.     The Parties' Parallel Discussions ............................................. 6

III.   LEGAL STANDARD .......................................................................... 7

IV.    ARGUMENT ....................................................................................... 7

       A.     Under Controlling Law, Netflix Is Not a Prevailing Party in Any
              Action, and Its Motion Should Be Denied for This Reason Alone ... 7

       B.     Regardless, This Case Is Not "Exceptional" Under the Facts
              Included in Netflix's Motion, Let Alone the Salient Facts Netflix
              Left Out ................................................................................. 11

       1.  Realtime's Claims Are Strong ........................................................ 11

       2.  Realtime's Litigation Conduct Was Reasonable ............................ 12

       C.     Netflix's Request for § 285 Attorneys' Fees from the Delaware
              Action and the IPR Proceedings Are Legally and Factually
              Unsupported ......................................................................... 21

       1.  As a Matter of Law, Netflix's Flawed Theory for § 285 Fees for the Delaware
           Action Cannot Be Made in This Court and Is Otherwise Waived ................... 21

       2.  Netflix's Theory for Fees from its Voluntarily Maintained and Still-Pending
           IPRs Finds No Support in the Law or the Facts ............................................ 21

       D.     Netflix's Alternative Request for Fees Under This Court's Inherent
              Powers Falls Well Short of Satisfying That Heightened Standard
              and Also Fails ....................................................................... 23

       E.     Consistent With Its Flawed Arguments Regarding Entitlement to
              Fees, the Amount of Netflix's Claimed Fees Are Excessive and
              Unreasonable on Its Face ....................................................... 23

V.     CONCLUSION ................................................................................ 25

i

# TABLE OF AUTHORITIES

1

## CASES

2

*A Metal Source. LLC v. All Metal Sales. Inc..*
No. 1:14-CV-01020-DAP, 2016 WL 245981 (N.D. Ohio Jan. 21, 2016)............ 16

3

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.,*
4    532 U.S. 598 (2001) ......................................................................... 7, 8, 10

5

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.,*
79 F. Supp. 3d 1111 (C.D. Cal. 2015) ............................................ 17

6

*Cellspin Soft. Inc. v. Fitbit. Inc..*
7    927 F.3d 1306 (Fed. Cir. 2019) ..................................................... 3, 13

8

*China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.,*
No. CV 02-5493 LGB JWJX, 2003 WL 21982477 (C.D. Cal. Mar. 12, 2003) ... 23

9

*Collectors Universe. Inc. v. Blake.*
10    No. SACV 14-0333 AG (DFMx), 2015 WL 12698449 (C.D. Cal. Mar. 16,
2015) ................................................................................................ 6, 7, 12

11

*CRST Van Expedited, Inc. v. E.E.O.C.,*
12    136 S. Ct. 1642 (2016) .................................................................... 9, 10

13

*Deckers Outdoor Corp. v. Romeo & Juliette. Inc..*
No. 2:15-cv-02812-ODW(CWx), 2016 WL 5842187 (C.D. Cal. Oct. 5, 2016) ... 7

14

*Drone Techs.. Inc. v. Parrot S.A..*
15    No. 2:14-CV-00111-AJS, 2015 WL 4545291 (W.D. Pa. July 21, 2015)............ 22

16

*EON Corp.IP Holdings LLC v. Cisco Sys. Inc,*
No. 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. July 25, 2014).............. 23

17

*F4W, Inc. v. Tracstar Sys., Inc..*
18    2015 WL 12840464 (M.D. Fla. June 18, 2015) .................................... 9

19

*F4W, Inc. v. Tracstar Sys., Inc..*
No. 6:12-CV-1539-Orl-28KRS, 2015 WL 12838856 (M.D. Fla. Apr. 3,
20    2015)................................................................................................ 9, 10

21

*First Time Videos, LLC v. Oppold,*
559 F. App'x 931 (11th Cir. 2014) ..................................................... 8

22

*First Time Videos, LLC v. Oppold,*
23    No. 6:12-CV-1493-Orl-36KRS, 2013 WL 12094410 (M.D. Fla. Sept. 16,
2013) ................................................................................................ 8

24

*Gavmar Indus.. Inc. v. Cincinnati Sub-Zero Prod., Inc.,*
25    790 F.3d 1369 (Fed. Cir. 2015) ......................................................... 12

26

*John Akridge Co. v. Travelers Cos.,*
944 F. Supp. 33 (D.D.C. 1996)............................................................. 20

27

*John Akridge Co. v. Travelers Cos..*
28    No. 95-7237, 1997 WL 411654 (D.C. Cir. June 30, 1997) .................. 20

*Keith Mfg., Co. v. Butterfield,*
  256 F. Supp. 3d 1123 (D. Or. 2017) .................................................... 9

*Lennard v. Yeung,*
  No. CV 10–09322 MMM (AGRx), 2011 WL 13217925 (C.D. Cal. Aug. 16,
  2011) ................................................................................................ 14

*Medison Am., Inc. v. Preferred Med. Svs., LLC,*
  No. 2:05-02390-DKV, 2010 WL 11601462 (W.D. Tenn. Nov. 12, 2010) ......... 16

*Mujica v. Occidental Petroleum Corp.,*
  381 F. Supp. 2d 1134 (C.D. Cal. 2005) .............................................. 14

*Munchkin, Inc. v. Luv N' Care, Ltd.,*
  No. CV 13-06787 JEM, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) ........ 16, 22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  134 S.Ct. 1749 (2014) ................................................................ 6, 12

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.,*
  No. 18-CV-06199-LHK, 2019 WL 3804691 (N.D. Cal. Aug. 13, 2019) ...... 15, 18

*Rambus Inc. v. Infineon Techs. Ag,*
  318 F.3d 1081 (Fed. Cir. 2003) ....................................................... 21

*Red v. Kraft Foods, Inc.,*
  680 F. App'x 597 (9th Cir. 2017) ..................................................... 25

*Red v. Kraft Foods, Inc.,*
  No. CV 10-1028-GW(AGRx), 2015 WL 12670201 (C.D. Cal. Apr. 29, 2015) .. 25

*RFR Indus., Inc. v. Century Steps, Inc.,*
  477 F.3d 1348 (Fed. Cir. 2007) ................................................. passim

*Shipping & Transit, LLC v. Hall Enterprises, Inc.,*
  No. CV 16-06535-AG-AFM, 2017 WL 3485782 (C.D. Cal. July 5, 2017) ........ 16

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.,*
  No. 2:16-cv-04502-MLH (MRWx), 2018 WL 6016990 (C.D. Cal. Sept. 4, 2018)
  ............................................................................................... 23

*United States v. Dunkel,*
  927 F.2d 955 (7th Cir. 1991) .......................................................... 25

*Vasudevan Software, Inc. v. Microstrategy, Inc.,*
  No. 11-CV-06637-RS, 2015 WL 4940635 (N.D. Cal. Aug. 19, 2015) ........... 7, 15

*Yagman v. Edmondson,*
  723 F. App'x 487 (9th Cir. 2018) ..................................................... 25

**STATUTES**

35 U.S.C. § 101 ................................................................... passim

35 U.S.C. § 285 ................................................................... passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RULES**

Fed. R. Civ. P. 41(a)(1)(B) ................................................................. 8, 11
Fed. R. Civ. P. 41(a)(1)(i) ................................................................. 1, 7, 8
Fed. R. Civ. P. 41(a)(1)(ii) ................................................................. 9, 10
Fed. R. Civ. P. 41(a)(2) ................................................................. 10
Fed. R. Civ. P. 41(d) ................................................................. 4, 5, 21, 25

## I.    INTRODUCTION

Netflix, Inc. and Netflix Streaming Service, Inc. (collectively, "Netflix")'s motion seeking a staggering ***$3 million*** in attorneys' fees against Realtime Adaptive Streaming LLC ("Realtime") for a case that never progressed past the pleading stage, and in which discovery had not even begun, should be denied. In making this extraordinary request, Netflix has (i) mischaracterized and misapplied controlling Federal Circuit precedent regarding its legal entitlement to attorneys' fees under § 285, (ii) misrepresented Realtime's positions and conduct, and (iii) drastically overstated the amount of the fees reasonably incurred, including by claiming fees which bear no relation all to the purported conduct complained of in its motion.

Netflix does not and cannot show that Realtime's claims were objectively baseless. Instead, the crux of Netflix's motion is alleged litigation misconduct. But the total conduct complained of amounts to little more than the filing of two voluntary dismissals, in accordance with all applicable rules, and opposing Netflix's transfer motions. This conduct was reasonable—and far from exceptional. Indeed, the only reason Realtime ultimately dismissed this case was due to its changed circumstances and financial considerations, as explained in the accompanied declaration. It was not caused by Netflix's motions, which Realtime believed would be denied.

Netflix's fee request fails for several, dispositive reasons. First, Netflix is not a prevailing party. The Federal Circuit has squarely held that "a plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(i) does not bestow 'prevailing party' status upon the defendant." *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007). Contrary to Netflix's assertions, the Federal Circuit's holding does *not* distinguish between first and second dismissals. Thus, under controlling Federal Circuit precedent, Netflix is not a prevailing party and its motion should be denied on this basis alone.

Second, Netflix does not come close to showing this case is exceptional. The Delaware Magistrate issued a report recommending dismissal of some patents but

declined to dismiss two others. Realtime filed objections and waited *seven* months while the case was in limbo. Then finally, Realtime exercised its right to voluntarily dismiss its claims without prejudice under Rule 41(a)(1)(i). If Realtime's intention was to avoid an invalidity ruling (as Netflix alleges), it would have dismissed immediately after the R&R, not seven months later.

Realtime's decision to file in this District—where it had two, far-advanced cases asserting the same patents—was also reasonable. Netflix's headquarters and witnesses are in California, and it previously argued (in requesting transfer to NDCal) that "Realtime's Claims Arose in and Are Closely Tied to California." Thus, venue in this District was both proper and convenient. Realtime did not believe that Netflix could meet its "heavy burden" to show that Delaware is "clearly more convenient" than this District, especially given its prior representations. These are routine litigation practices and far removed from the type of misconduct that justifies a fee award.

Third, the vast majority of Netflix's requested fees is not even from this case, but from the Delaware Action and other IPR proceedings. Netflix's entire theory for why these are recoverable depends on its unsupported and expansive "but for" theory of fee shifting. It also depends on the Court finding that Realtime's claims were objectively and exceptionally baseless *from the first moment* the Delaware Action was filed. Of course, Netflix does not come close to making this showing, and Realtime refutes any such contention.

In sum, Netflix is not a prevailing party, this case is not even remotely exceptional, and the vast majority of the fees requested are not legally recoverable. Realtime has respected this Court's resources by voluntarily dismissing this case at the pleading stage for reasons unrelated to the merits. If any party has disrespected judicial resources, it is Netflix by: (i) weaponizing fee motions, (ii) inundating the Court with lengthy declarations and exhibits, and (iii) seeking $3 million in attorneys' fees (and full reimbursement for its IPRs) for a case in its infancy. Netflix's motion should be denied in its entirety.

## II.   RELEVANT FACTS

### A.   The Delaware Action

On November 21, 2017, Realtime filed a patent infringement complaint against Netflix in the District of Delaware concerning four Fallon patents and two non-Fallon patents.[1] *Realtime Adaptive Streaming, LLC v. Netflix Inc. et al.*, Case No. 1:17-cv-01692-CFC-SRF (D. Del.) ("Delaware Action"). Each of the patents asserted in the Delaware Action relates to digital data compression.

On February 5, 2018, Netflix filed a motion to dismiss for failure to state a claim. Delaware Action, Doc. 44. On December 12, 2018, the Magistrate Judge issued a report and recommendation finding the four Fallon patents ineligible under 35 U.S.C. § 101. Delaware Action, Doc. 48. But as to the two non-Fallon patents, the Magistrate Judge recommended denial of Netflix's motion to dismiss. *Id.* Realtime filed its objections to the Magistrate's report and recommendations on December 26, 2018, to which Netflix responded. Delaware Action, Docs. 49, 50.

By June 2019—*over 16 months* after Netflix filed its motion to dismiss, and six months after the Magistrate issued her report and recommendation—the Delaware Court still had not ruled on Realtime's objections. On June 26, 2019, immediately after the Federal Circuit's precedential decision in *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), Realtime filed a motion for leave to amend its complaint, and submitted a proposed amended complaint which provided detailed factual allegations addressing the § 101 findings in the Magistrate's report and recommendation. Delaware Action, Doc. 52.

By July 2019, the Delaware Court still had not issued a ruling on the Magistrate's R&R, Realtime's objections, and Realtime's motion to amend. Thus,

---

[1] The Fallon patents are U.S Patent Nos. 7,386,046 ("'046 patent"), 8,934,535 ("'535 patent"), 9,769,477 ( "'477 patent"), and 9,762,907 ("'907 patent"); the two non-Fallon patents are U.S. Patent Nos. 9,578,298 ("'298 Patent") and 8,634,462 ("'462 patent"), which later reissued as RE46,777 ("'777 patent").

Realtime's case had been pending for *20 months*, and the case had still not progressed past the pleading stages. Nor had a scheduling order been entered. Meanwhile, Realtime's cases against Google and Adobe before this Court were in the midst of claim construction and fact discovery. On July 18, 2019, this Court conducted a *Markman* hearing and issued a tentative claim construction order construing terms from each of the six patents asserted in the Delaware Action. *Realtime v. Google LLC et al.*, Case No. 2:18-cv-03629-GW ("Google Action"), Doc. 81.

On July 22, 2019 Realtime filed a notice of voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(A)(i). Delaware Action, Doc. 56. Realtime's voluntary dismissal was entirely proper under the Rules and did not require Netflix's consent because it occurred at the pleading stage before Netflix answered.

## B.    This Case

Realtime split the Fallon patents, which are related and share a common specification, and the non-Fallon patents into two separate cases. Realtime filed this patent infringement case concerning the Fallon patents on July 23, 2019. Doc. 1. Realtime asserted the non-Fallon patents against Netflix in Case No. 2:19-cv-06359-GW-JC ("-6359 case"), also filed on July 23, 2019. On September 20, 2019, Realtime amended its complaint in this case, dropping the '907 patent and adding a new Fallon patent, U.S. Patent No. 8,054,879 ("'879 patent"). Doc. 14. The '907 patent was subject to an instituted IPR, whereas the '879 patent was not subject to any instituted or pending IPR. Further the '879 patent recites a claim term—"access profile"—that was recently construed by this Court in the Google and Adobe cases.

Realtime chose to file in this District because it had two other related cases concerning the same patents pending before this Court—which, despite being filed several months after the Delaware Action, had already progressed to expert discovery. This Court was thus already familiar with Realtime's patents, and indeed, had already issued a § 101 ruling and claim construction order addressing each of the asserted patents. *See* Google Action, Docs. 36, 84. This District is also where Realtime's

outside counsel, Russ August is located. This District is also convenient for Netflix given that it has offices, facilities, and employees in this District, and is headquartered nearby in Northern California. Indeed, Netflix tried to transfer the Delaware Action to the Northern District of California, arguing that Delaware was an inconvenient forum. Doc. 34-5. Thus, Realtime believed that a case in this District was both proper and convenient, and unlikely to be transferred given Netflix's prior representations. Mirzaie Decl. ¶ 5.

On October 7, 2019, the same day it filed its motion to transfer this case to Delaware, Netflix also filed a motion to recover its attorneys' fees incurred in the Delaware Action under Fed. R. Civ. P. 41(d). Doc. 15. In its Rule 41 motion, Netflix sought $350,000 in attorneys' fees and costs for a case that never progressed past the pleading stage, and in which discovery had not even begun.[2]

Realtime opposed both motions and anticipated that it would successfully obtain denials of the same. Docs. 25, 26, Mirzaie Decl. ¶ 8. For example, Netflix's motion for attorneys' fees was meritless and contrary to overwhelming authority limiting Rule 41(d) to "costs" (and also undermined by the Federal Circuit's recent unanimous decision in *Nantkwest*). Realtime also believed transfer would be denied because Netflix, given its prior representations, could not meet its "heavy burden" to show that Delaware was "clearly more convenient" than California. *Id.*

But Realtime carefully considered its overall enforcement strategy—including this case and the Google and Adobe cases—including the potential for settlement, the potential damages award, and the anticipated fees and costs to be incurred in the course of litigation. *Id.* ¶¶ 9–13. And in light of Realtime's current financial situation, Realtime ultimately decided that it no longer made financial sense to continue to pursue its claims against Netflix, even had it prevailed on Netflix's pending motions

---

[2] Now, contradicting its earlier, already-excessive request, Netflix seeks a staggering $568,274.05 in attorneys' fees alone for the Delaware Action.

as expected. *Id.* Indeed, Realtime had just completed expert reports and discovery in the Google and Adobe cases, and trials are scheduled for April 2020. Realtime's dismissal was due to circumstances surrounding its business and the burdens of pursuing its patent rights against many large infringers, and had nothing to do with the merits of its claims. *Id.* ¶ 13. Realtime has always had and still has a good faith belief in the validity of its patents, and believes it would have succeeded on its infringement claims against Netflix. *Id.*

### C.   The Parties' Parallel Discussions

Realtime's efforts to reduce costs are confirmed by the parties' discussions. ███

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

    ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████

In light of Netflix's constantly changing and unreasonable demands, Realtime decided that the best course of action would be to simply dismiss its claims, as Netflix had not yet answered. *Id.* ¶ 12. Accordingly, on November 14, 2019, Realtime voluntarily dismissed this case (Doc. 31) and the -6359 case concerning the non-Fallon patents. Realtime did so before the hearing on Netflix's pending motions to lessen the burden on the parties and to prevent the Court from wasting time and resources hearing argument on and deciding the motions. *Id.*

## III.   LEGAL STANDARD

To prevail on a motion for attorneys' fees under § 285, Netflix must show that this case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Courts in this district have expressly admonished parties for bringing § 285 motions even where, *unlike here*, the accused infringer prevailed in invalidating the asserted patents. *See, e.g.*, *Collectors Universe, Inc. v. Blake*, No. SACV 14-0333 AG (DFMx), 2015 WL 12698449, at *1 (C.D. Cal. Mar. 16, 2015) (denying fee motion where defendant that obtained summary judgment of invalidity).

"[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW(CWx), 2016 WL 5842187, at *3 (C.D. Cal. Oct. 5, 2016). Further, § 285 motions based on the manner of litigation generally require "egregious behavior," such as providing false declarations, filing frivolous motions/claims, creating a sham corporation to manufacture venue, filing suit knowing that plaintiff may not own the patent, and sandbagging the defendant with newly produced documents and infringement contentions. *Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-CV-06637-RS, 2015 WL 4940635, at *5 (N.D. Cal. Aug. 19, 2015) (finding case unexceptional even where, unlike here, plaintiff "engaged in numerous questionable and overly aggressive litigation tactics"). Simply put: "Exceptional cases are, by definition, the exception." *Collectors Universe*, 2015 WL 12698449, at *1.

## IV.   ARGUMENT

### A.   Under Controlling Law, Netflix Is Not a Prevailing Party in Any Action, and Its Motion Should Be Denied for This Reason Alone

Whether a party is a prevailing party under § 285 is determined by the law of

1  the Federal Circuit. *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed.

2  Cir. 2007). And the Federal Circuit has squarely held that "*a plaintiff's voluntary*

3  *dismissal without prejudice pursuant to Rule 41(a)(1)(i) does not bestow 'prevailing*

4  *party' status upon the defendant.*" *Id.*[3] "In order for a defendant to be said to have

5  'prevailed' as the result of a Rule 41 dismissal, the dismissal must have 'sufficient

6  *judicial imprimatur* to constitute a "*judicially sanctioned* change in the legal

7  relationship of the parties.'" *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W.*

8  *Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001)). The Federal Circuit

9  provided two independent reasons why a voluntary dismissal pursuant to Rule

10  41(a)(1)(i) does not meet this requirement: (1) it does not constitute a change in the

11  legal relationship of the parties because the plaintiff is free to refile its action, and (2)

12  "*a plaintiff's voluntary dismissal under Rule 41(a)(1)(i) is not 'judicially sanctioned'*

13  *because it does not require a court order, nor does the court have the power or*

14  *discretion to place any conditions on it.*" *Id.*

15  　　Here, Realtime voluntarily dismissed this case without prejudice pursuant to

16  Rule 41(a)(1)(i). Doc. 30. Thus, under controlling Federal Circuit precedent, Netflix

17  is not a prevailing party. Indeed, as admitted by Netflix, Realtime is still free to refile

18  its case at least with respect to the '879 patent. Mot. at 10 n.5. That this is Realtime's

19  second voluntary dismissal for the other patents is inconsequential, as the dismissal

20  was not judicially sanctioned. Realtime filed its notice before Netflix answered, and

21  thus the dismissal did not require a court order. Nor was the Court empowered to

22  place any conditions on the dismissal. Fed. R. Civ. P. 41(a)(1)(A)(i); *RFR Indus.*, 477

23  F.3d at 1353; *First Time Videos, LLC v. Oppold*, No. 6:12-CV-1493-Orl-36KRS,

24  2013 WL 12094410, at *5 (M.D. Fla. Sept. 16, 2013), *aff'd*, 559 F. App'x 931 (11th

25  Cir. 2014) ("[B]ecause there is no court action involved in the dismissal of a case

26  under the two dismissal rule pursuant to Fed. R. Civ. P. 41(a)(1)(B), an 'adjudication

27

28  [3] All emphases added unless otherwise noted.

on the merits' under that rule does not constitute a 'judicially sanctioned change in the legal relationship of the parties' as required by *Buckhannon*," and thus does not render defendant a "prevailing party").

To support its erroneous argument that Netflix it is a prevailing party, Netflix mischaracterizes the applicable Federal Circuit precedent, and attempts to misdirect the Court to various legally and factually inapposite district court cases. Mot. at 10–11. Netflix cites *RFR Industries* for the proposition that "[a] first voluntary dismissal ordinarily does not make the defendant the prevailing party because the plaintiff is free to refile its claims." Mot. at 10. This is misleading: *RFR Industries* did ***not*** distinguish between first and second voluntary dismissals. The Federal Circuit generally held, without exception, that voluntary dismissals under Rule 41(a)(1)(i) do not confer prevailing party status on defendants. Netflix also omits the critical aspect of the Federal Circuit's holding requiring the dismissal to be a "***judicially sanctioned change in the legal relationship of the parties.***" *RFR Indus.*, 477 F.3d at 1353. The Federal Circuit clearly explains that a plaintiff's voluntary dismissal under Rule 41(a)(1)(i) is not judicially sanctioned because it does not require a court order—and thus the defendant is not a prevailing party for purposes of § 285. *See id.* This holds true regardless of whether the dismissal is a first or second voluntary dismissal.

Critically, none of the cases cited by Netflix to support its prevailing party argument (Mot. at 11) are patent cases, none concern attorneys' fees under § 285, and none apply or even mention the Federal Circuit's standard in *RFR Industries*. In contrast, courts properly applying Federal Circuit law to § 285 motions hold that voluntary dismissals pursuant to Rule 41(a)(1)(A), even with prejudice, do *not* constitute the requisite judicially sanctioned change in the legal relationship of the parties. Such dismissals are automatic and do not require a court order. *See Keith Mfg., Co. v. Butterfield*, 256 F. Supp. 3d 1123, 1135 (D. Or. 2017) (applying *RFR Industries* and denying motion § 285 motion because defendant was not a prevailing party; "When claims are dismissed simply by the filing of a voluntary ***dismissal (either with***

*or without prejudice)*, there is no judicial imprimatur to constitute a judicially sanctioned change."); *F4W, Inc. v. Tracstar Sys., Inc.*, No. 6:12-CV-1539-Orl-28KRS, 2015 WL 12838856, at *4 (M.D. Fla. Apr. 3, 2015), *R&R adopted*, 2015 WL 12840464 (M.D. Fla. June 18, 2015) (defendant was "not a prevailing party for purposes of a fee award under § 285 under the law of the Federal Circuit" where the parties filed a joint stipulation for dismissal with prejudice under Fed. R. Civ. P. 41(a)(1)(ii) as it did not require a court order and thus was not judicially sanctioned).

Netflix's reliance on *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642 (2016) is also misplaced. That case holds only that a favorable ruling *on the merits* is not a necessary predicate to find that a defendant has prevailed under Title VII's attorney fee provision. *Id.* at 1646. Even assuming this has any relevance to attorneys' fees under § 285, the Federal Circuit's ruling in *RFR Holdings* does not purport to require a favorable ruling on the merits. Consistent with *Buckhannon*, it only requires a judicially sanctioned change in the legal relationship of the parties, and thus is undisturbed by the Supreme Court's holding in *CRST Van*.[4]

It is thus clear that under controlling Federal Circuit and Supreme Court precedent, Netflix is not a prevailing party for purposes of an attorneys' fees award under § 285. Its motion should be denied on this basis alone.

---

[4] For example, applying *Buckhannon*, *RFR Industries*, and *CRST Van*, while a Rule 41(a)(1)(A) voluntary dismissal with or without prejudice (which does not require a court order) would not confer prevailing party status on the defendant, a Fed. R. Civ. P. 41(a)(2) voluntary dismissal with prejudice (which does require a court order) likely would, despite not being a ruling on the merits. *See F4W*, 2015 WL 12838856, at *5 ("[U]nlike a Rule 41(a)(1)(ii) dismissal, a voluntary dismissal under Rule 41(a)(2) requires a substantial role by the court for its effectuation: the plaintiff must move in writing to dismiss the action; the court must exercise discretion to approve or disapprove the motion; the court must decide whether to impose conditions on the moving party; and the dismissal is not valid unless the parties obtain a court order. Thus, a Rule 41(a)(2) dismissal has the 'judicial imprimatur' that a Rule 41(a)(1) dismissal lacks.").

**B.     Regardless, This Case Is Not "Exceptional" Under the Facts Included in Netflix's Motion, Let Alone the Salient Facts Netflix Left Out**

**1.     Realtime's Claims Are Strong**

Netflix's vague, speculative allegations that the patents are "likely ineligible and likely invalid," and that Realtime never should have filed this case (Mot. at 9, 13) are frivolous. Netflix gives no reasons for the Court to accept these allegations. First, Netflix's allegations are contrary to law because each asserted patent is presumed valid and must be proven to be invalid by clear convincing evidence. Second, they are directly contradicted by the Court's previous orders.

For example, in the related Google case concerning the *same* asserted patents, this Court denied a motion to dismiss under § 101, finding that there is evidence that claims of the '046 and '477 patents "are tied to specific computer systems that 'improve[] computer functionality in some way' rather than being drawn to purely abstract concepts." Google Action, Doc. 36 at 6. The Court explained that these patent claims "are related to compression/decompression systems, an area firmly rooted in computer technology" and "relate to improvements to such compression / decompression technology." *Id.*[5] And in the Google and Adobe cases, the Court issued a claim construction order that rejected indefiniteness arguments for several terms, including "asymmetric" compression. Google Action, Doc. 84.

In alleging that the asserted claims are "weak" (Mot. at 13), Netflix fails to mention any of the Court's prior rulings. Instead, it misleads the Court with the erroneous assertion that Realtime "conceded it had no viable claim for infringement of the '535 patent" because certain claims were voluntarily disclaimed. *Id.* This is false. As the Court knows, claims 1–14 of the '535 patent remain valid, and claims 1

---

[5] The '879 patent was not asserted in the Google Action. This patent is related to the '046 and '477 patents, and cannot be said to be facially invalid. Regardless, the '879 patent is irrelevant to Netflix's motion, as it was not asserted in the Delaware Action and thus there was no Rule 41(a)(1)(B) "adjudication on the merits."

and 14 are currently asserted against Google. Thus, at all relevant times, Realtime had viable claims of infringement of the '535 patent against Netflix. That this is Netflix's only argument concerning the purported "weakness" of Realtime's infringement case shows that Realtime's infringement claims for all patents were reasonable.

In the absence of any judgment that *any* of the asserted patents are invalid (for any reason), there is no evidence that any of Realtime's claims against Netflix were objectively baseless. The most Netflix can point to is the Delaware report and recommendation, which was never adopted by the District Court, and thus never resulted in a judgment of invalidity. This cannot support a finding of objective baselessness, especially in light of this Court's contrary ruling. Indeed, this Court previously commented on the R&R in denying a motion to stay. *See* Google Action, Doc. 60 at 4. The Court found reliance on that R&R "unpersuasive" because it "considered and largely denied a motion to dismiss against the same patents addressed by the Magistrate Judge in Delaware" and "reached different determinations." *Id.* Indeed, there was no reason for Realtime to believe the Magistrate's R&R (which was erroneous) and disregard this Court's ruling (which was correct).

In sum, Netflix's insinuations about the merits of Realtime's case must be rejected.[6] And it does not even attempt to, as it must, show that Realtime's litigation positions were exceptionally meritless.

## 2.    Realtime's Litigation Conduct Was Reasonable

Realtime's purported conduct in the Delaware Action is irrelevant to the issue

---

[6] Even accepting Netflix's false allegations as true, that would still not support an award of attorneys' fees under § 285. The Supreme Court and Federal Circuit have made clear that "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (citing *Octane Fitness*, 134 S. Ct. at 1753). Courts in this district have likewise admonished parties for bringing fee motions where, unlike here, the accused infringer simply prevailed in invalidating the asserted patents. *See, e.g.*, *Collectors Universe*, 2015 WL 12698449, at *1 (denying fee motion where defendant that obtained summary judgment of invalidity).

1    of whether *this case* is exceptional. Netflix cites no authority that it can rely on
2    conduct that occurred in entirely *separate proceedings* before a *different court* to
3    support an award of attorneys' fees under § 285. And even if Realtime's conduct in
4    the Delaware Action were relevant, this would support not support a finding of
5    exceptionality. The total conduct complained of amounts to little more than the filing
6    of two voluntary dismissals, in accordance with all applicable rules, and opposing
7    Netflix's transfer motions. This conduct was reasonable.

8                    (a)    Realtime acted reasonably in the Delaware Action

9          In an attempt to transform this case into an exceptional case, Netflix repeatedly
10   accuses Realtime "forum shopping" to avoid an unfavorable ruling in the Delaware
11   Action. But derogatory labels are not helpful to the Court. Netflix also fails to
12   recognize that the report and recommendation was not wholly unfavorable to
13   Realtime—the Magistrate Judge recommended denial of Netflix's motion to dismiss
14   for two of the asserted patents (the '298 and '462/'777 patents). And an invalidity
15   ruling as to the other patents was not a foregone conclusion. In December 2019,
16   Realtime filed strong objections to the Magistrate's report and recommendation.

17         By June 2019—*over 16 months* after Netflix filed its motion to dismiss, and six
18   months after the Magistrate issued her report and recommendation—the Delaware
19   Court still had not ruled on Realtime's objections. On June 25, the Federal Circuit
20   issued a precedential § 101 decision in *Cellspin Soft, Inc. v. Fitbit, Inc.*, reversing a
21   district court's dismissal of an amended complaint based on patent-ineligibility,
22   because "the district court erred by not accepting those [amended] allegations as true."
23   927 F.3d 1306, 1317 (Fed. Cir. 2019). In doing so, the Federal Circuit held that
24   specific, plausible allegations regarding any question under *Alice* Step 2 must be
25   accepted as true at the pleadings stage. *Id.* at 1316–18. On June 26, Realtime filed a
26   motion for leave to amend its complaint, and submitted with its motion a proposed
27   amended complaint which provided detailed factual allegations addressing the § 101
28   findings in the Magistrate's R&R. Delaware Action, Doc. 52.

Thus, Realtime believed the R&R would be overruled or at least any invalidity ruling would be reversed by the Federal Circuit. *See* Google Action, Doc. 60 at 5 (this Court noting that "appeal of a final order to the Federal Circuit will likely be a lengthy process that does not warrant this Court staying [the Adobe case] at this time"). But after being stuck in the pleading stages for almost two years, Realtime decided to voluntarily dismiss the claims on July 22, 2019.[7]

Realtime is entitled to the just and speedy enforcement of its patent rights, and to determine how best to pursue those goals by following proper procedure. Realtime cannot be blamed for exercising its right to voluntarily dismiss since the Federal Rules afford plaintiffs that right. *See Lennard v. Yeung*, No. CV 10–09322 MMM (AGRx), 2011 WL 13217925, at *6 (C.D. Cal. Aug. 16, 2011) (merely dismissing and re-filing several of the same claims in a different court "does not rise to the level of vexatious litigation"). And contrary to Netflix's assertion, Realtime did not choose this District to avoid a foregone invalidity ruling. *See* Mot. at 13. Rather, it filed here because this District had two other far-advanced related cases and issued a claim construction order, Realtime's outside counsel is located here, Netflix has offices, facilities, and employees in this District, and Netflix is headquartered nearby in Northern California. *See* Doc. 26 at 5. Indeed, Netflix previously attempted to transfer the Delaware Action to California and made various representations confirming that California is a far more convenient Netflix than Delaware.[8] Thus, Realtime believed that venue in this

---

[7] Netflix repeatedly overstates the Delaware District Judge's invalidity ruling in a case involving Realtime's parent company, Realtime Data LLC. *See* Mot. at 6, 15. That case was ***unrelated*** and involved completely ***different and unrelated patents***. That ruling did not, and could not, change the patent-eligibility of the asserted patents under Federal Circuit law. For the same reason, Netflix's submission of that order as alleged "further support" (*id.* at 6) was of no concern to Realtime.

[8] In its motion to transfer the Delaware Action, Netflix argued that there are no witnesses and evidence in Delaware, neither Realtime nor Netflix have any relevant connections to Delaware, and that "Realtime's Claims Arose in and Are Closely Tied to California." *See* Doc. 34-5. at 3, 7–13.

1  District was proper and convenient for both parties. *See, e.g.*, *Mujica v. Occidental*
2  *Petroleum Corp.*, 381 F. Supp. 2d 1134, 1141 (C.D. Cal. 2005) (choosing a forum
3  based on reasons relating to jurisdiction and "where the defendant is amenable to suit"
4  are "valid," and thus require deference to the plaintiff's choice of forum).

5     At bottom, Netflix's allegation of exceptional misconduct is that Realtime
6  dismissed the Delaware Action **solely** to avoid a guaranteed invalidity ruling. That
7  allegation must be rejected. First, Netflix can point to no prior instance (much less a
8  pattern of behavior) where Realtime or its parent company dismissed an action to
9  avoid an adverse finding on the merits. Second, Realtime did not dismiss the Delaware
10  Action until seven months after the R&R was issued. A final order could and likely
11  would have issued anytime in that interim. If Realtime wanted to avoid an unfavorable
12  ruling at all costs, it would have dismissed the Delaware Action immediately after the
13  R&R issued instead of waiting seven months.

14     Netflix implies that Realtime's opposition to Netflix's motion to transfer to the
15  Delaware Action to the Northern District of California is misconduct. This is absurd.
16  Realtime was not required to defer to Netflix's preferred venue where it enjoys a home
17  field advantage and where Realtime does not have any related cases pending. And
18  since Netflix's motion was denied, Realtime's opposition was certainly not baseless.
19  *See Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, No. 18-CV-06199-LHK,
20  2019 WL 3804691, at *3 (N.D. Cal. Aug. 13, 2019) ("good faith zealous advocacy"
21  in opposing motion to stay is "not exceptional"); *Vasudevan Software*, 2015 WL
22  4940635, at *6 (denying § 285 motion even where plaintiff "engaged in numerous
23  questionable and overly aggressive litigation tactics," as such behavior "was not
24  sufficiently egregious to justify fee-shifting").

25     Finally, even if Realtime's conduct in the Delaware Action could be
26  characterized as "forum shopping," that does not rise ot the level of exceptional
27  conduct to justify an award of attorneys' fees. As explained, given rampant delays in
28  the Delaware Action, Realtime decided that pursing its claims in California was

proper under the Federal Rules and a better use of its time and resources. Further, Netflix itself is guilty of "forum shopping" by attempting to transfer this case to Delaware after previously arguing that Delaware was an inconvenient forum. Doc. 34-5. *See Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (the conduct of the movant is relevant to determining exceptionality under § 285). Regardless, Netflix fails to cite a single case where attorneys' fees were awarded solely on the basis of purported "forum shopping."

        (b)     Netflix's cited cases are entirely inapposite and confirm that Realtime's conduct does not approach exceptional misconduct

None of Netflix's cited cases are remotely similar to the facts here. In *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787 JEM, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018), the court gave "great weight" to the fact that the plaintiff knew about invalidating prior art before it filed its patent application, failed to disclose that prior art to the USPTO or produce it to defendant in discovery, and instead continued to doggedly pursue its case despite multiple "red flag warnings" regarding the "substantive weakness" of its claims. *Id.* at *5–6. In *Shipping & Transit, LLC v. Hall Enterprises, Inc.*, No. CV 16-06535-AG-AFM, 2017 WL 3485782 (C.D. Cal. July 5, 2017), the court found the case exceptional largely based on its finding that "Plaintiff's § 101 position was objectively unreasonable." *Id.* at *7. The court also considered evidence regarding plaintiff's practice of promptly dismissing its lawsuits when faced with challenges to the validity of its patents, and its history of aiming for low-value licenses falling at or below the cost of defense—i.e., nuisance settlements. *Id.* In *Medison Am., Inc. v. Preferred Med. Sys.*, LLC, No. 2:05-02390-DKV, 2010 WL 11601462 (W.D. Tenn. Nov. 12, 2010), the court awarded fees based on its finding that the case was "unfounded when it was brought," in addition to plaintiff's "oppressive" litigation conduct, which included introducing "false, scandalous and wholly irrelevant testimony about the personal life of one of the [defendants]," making several meritless arguments on appeal, filing supplemental authority to

further delay a final ruling, issuing subpoenas to harass the defendant, and unduly prolonging the litigation to drive up litigation costs. *Id.* at *3. And in *A Metal Source, LLC v. All Metal Sales, Inc.*, No. 1:14-CV-01020-DAP, 2016 WL 245981 (N.D. Ohio Jan. 21, 2016), the court similarly found that the plaintiff's Lanham Act claims "lacked foundation when filed." *Id.* at *13. Further, the plaintiff brought two different lawsuits in state and federal court based on the same set of facts, pursued both cases at the same time, and then abandoned the state action after the parties had already engaged in "extensive discovery," summary judgment, *and appeals*, thus resulting in litigation spanning four courts over three years and making the case "unnecessarily resource-intensive for both the courts and parties." *Id.* But even then, the court ordered the plaintiff to pay for defendants' attorneys' fees and costs for the state court action "*if and only if* Plaintiff goes forward with the federal case." *Id.* (emphasis in original).

None of the conduct in these cases is remotely similar to Realtime's conduct here (even assuming all of Netflix's allegations to be true). Even under Netflix's own cases, Realtime's conduct cannot justify an award for attorney's fees.[9] Realtime's patents remain valid, and indeed, this Court found evidence they are patent-eligible. Realtime has never withheld relevant discovery or otherwise engaged in any type of litigation misconduct. Netflix can point to no evidence that Realtime has ever

---

[9] *See also Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1118–19 (C.D. Cal. 2015) (granting § 285 motion where plaintiff targeted a customer defendant with "especially burdensome" and "unnecessary" discovery "without planning to use any of it at trial," refused the defendant's requests for reasonable search terms, refused to dismiss the defendant "without extracting a payment" despite having "never articulated an infringement or damages theory" for that defendant, suggesting that plaintiff "targeted" the defendant "and pursued discovery for the purpose of harassing [defendants] into a settlement," noticed a deposition for the Saturday of the July 4th holiday weekend, refused to reschedule, and ultimately canceled that deposition without ever re-noticing it, repeatedly failed to comply with the Local Rules, and "unnecessarily dragged out these discovery proceedings, both by filing serial motions concerning largely identical discovery disputes . . . and by initially failing to agree to the Federal Circuit's discovery order").

attempted to extract a nuisance settlement from any defendant, including Netflix, and Realtime has *never* dismissed a case in the face of a validity challenge.

Further, it is Netflix, not Realtime, that unreasonably prolonged this litigation.

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████ Mirzaie Decl. ¶¶ 10–12, Exs. 1–7. Netflix should not be permitted to weaponize § 285 in such a manner. Netflix's own forum shopping and unreasonable litigation conduct negates any claim that Realtime acted improperly.

(c)     Realtime likewise acted reasonably in this action

Realtime's conduct in this CDCal action—where the Court has not even heard or decided a single motion—was also proper. As an initial matter, Realtime has accommodated Netflix at every turn, granting every requested extension, such as to respond to the complaints and even to file this meritless fee motion. *See* Exs. 8–9. Netflix's only allegations center on Realtime's conduct in opposing Netflix's motion to transfer this case to Delaware and voluntarily dismissing the case. But neither make this case exceptional or warrant an award of attorney's fees.

As to the transfer motion, Netflix again relies on the same baseless accusations that Realtime was forum shopping to avoid an unfavorable ruling, which fail for the reasons above. Moreover, Netflix's allegations of forum shopping are wholly inapplicable to the '298 and '462/'777 patents, as the Delaware Magistrate recommended *denial* of Netflix's motion with respect to these patents. Nonetheless, Netflix improperly seeks to recover its fees relating to the litigation of the '298 and '462/'777 patents, including likely hundreds of thousands if not millions of dollars in fees associated with the IPRs for these patents. *See* Mot. at 1 (requesting fees for Case No. 2:19-cv-06359), Doc. 34-62, Doc. 34-63, Doc. 34-65.

18

Netflix also relies on the same faulty theory that Realtime was required to defer to Netflix's preferred venue (which was originally the Northern District of California, and then transformed to Delaware), and that any act in opposing a transfer justifies an award of attorneys' fees. This is frivolous. Realtime was entitled to advocate for its preferred venue, just as Netflix was entitled to do. *See Orcinus Holdings*, 2019 WL 3804691, at *3. And even a cursory review of Realtime's opposition reveals that its arguments were well-supported and not objectively baseless. *See* Doc. 25.

Indeed, Netflix bore the "heavy burden" to prove that Delaware was a "clearly more convenient forum" than California. And in light of its previous representations that there are no witnesses and evidence in Delaware, and that "Realtime's Claims Arose in and Are Closely Tied to California" (Doc. 34-5 at 10), Realtime believed that transfer would have been denied. But regardless of that unknown outcome, Realtime's opposition was not unreasonable, much less exceptional.

As to the voluntary dismissal, that was not exceptional either. Realtime's voluntary dismissal before Netflix answered and before the parties engaged in any discovery was in accordance with all applicable rules. Realtime did not dismiss the case to avoid any adverse rulings. Realtime fully briefed Netflix's pending motions and believed they would be denied. The Court can review that briefing to confirm that Realtime's oppositions were reasonable and certainly not exceptional. Realtime was also confident it would successfully defend the asserted patents against any invalidity challenges, including under § 101.

Rather, the only reason Realtime ultimately decided to dismiss this case was based on an assessment of its overall enforcement strategy and financial considerations. Mirzaie Decl. ¶¶ 9–13. Realtime explained this to Netflix multiple times during the parties' discussions. *Id.* ¶ 10–11, Exs. 1–7. But instead of engaging in good faith discussions, Netflix insisted on prolonging this litigation and driving up its own litigation costs to further penalize Realtime in its forthcoming fees motion. If Netflix were truly concerned about costs, it would have long-ago agreed to Realtime's

reasonable proposals to obviate certain patent claims and IPR proceedings. Netflix still has not withdrawn its IPRs.

Indeed, when Realtime's circumstances changed and it decided that pursuing its claims against Netflix no longer made sense, it dismissed this action as soon as practicable. That the dismissal occurred at the pleading stage, and before any motions were heard or decided, is a point in Realtime's favor. Netflix perversely uses this timing as the basis for its fee motion. But the facts contradict Netflix's innuendo. Realtime conducted this case reasonably, opposed Netflix's motions based on strong arguments, and never prolonged the case more than necessary.

The *John Akridge* case on which Netflix heavily relies is inapposite. In that case, the plaintiffs first filed suit in federal court, which was dismissed. *John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996), *aff'd*, No. 95-7237, 1997 WL 411654 (D.C. Cir. June 30, 1997). Plaintiffs then filed a second suit in Maryland state court, which was ultimately removed to the District Court of Maryland, and then transferred back to the District of Columbia—the same court that had previously dismissed the case. The court found that there was "no question that the Plaintiffs filed the instant suit with the specific intent of circumventing this Court's dismissal of its earlier suit." *Id.* In fact, the plaintiff resisted having the state case removed and transferred, knowing full well that once the case its way back to the District of Columbia, it would be immediately dismissed. *Id.* It was thus clear that the plaintiff in *John Akridge* knowingly and in bad faith pursued a baseless claim.

Here, by contrast, Netflix has not and cannot show that Realtime's claims were baseless. The facts here are also distinguishable for a myriad of reasons. The Delaware Magistrate's R&R was not adopted by the District Court and was not a final ruling or a dismissal. It also had mixed findings that recommended denying Netflix's motion for two patents. The Delaware Action also had rampant delays, with the District Judge not acting on the R&R for seven months and the case remaining in the pleading stage for 20 months. Realtime also had strong reasons to believe that venue was proper and

convenient in this District, particularly given Netflix's prior representations. Under all relevant laws, Realtime was well within its rights to dismiss the Delaware Action and file a new case.

### C.    Netflix's Request for § 285 Attorneys' Fees from the Delaware Action and the IPR Proceedings Are Legally and Factually Unsupported

Netflix's motion seeks a staggering $2.74 million in attorneys' fees from other cases and proceedings: the Delaware Action and other IPR proceedings. But Netflix is not entitled to those fees. Netflix's request is frivolous and abusive.

### 1.    As a Matter of Law, Netflix's Flawed Theory for § 285 Fees for the Delaware Action Cannot Be Made in This Court and Is Otherwise Waived

There can be no dispute that Netflix is *not* a prevailing party in the Delaware Action. The Delaware Action was voluntarily dismissed pursuant to Rule 41(a)(1)(A)(i), and because it was a first dismissal, Realtime was free to refile its claims. Netflix thus does not meet either requirement for prevailing party status under *RFR Industries*. 477 F.3d at 1353. Regardless, if Netflix believed it was entitled to attorneys' fees for any conduct that occurred in the Delaware Action, it should have filed a motion in that court. Netflix thus waived any possible claim it has to attorneys' fees' relating to the Delaware Action.[10]

### 2.    Netflix's Theory for Fees from its Voluntarily Maintained and Still-Pending IPRs Finds No Support in the Law or the Facts

Netflix's request for fees from IPR proceedings is also extraordinary and unwarranted for many reasons. Those IPRs are pending and Netflix has not "prevailed" in any of them. And as a post-grant review procedure before the PTO, it

---

[10] Though Rule 41(d) provides for the recovery of *costs* (and not attorneys' fees) from a previously filed action under certain circumstances, Netflix did not renew its Rule 41(d) request. And in any event, such a request would fail for the reasons set forth in Realtime's opposition to Netflix's prior fees motion. Doc. 26.

does not even have any concept of "prevailing party" or fee-shifting. In essence, Netflix would take advantage of the IPR regime created by the AIA and seek reimbursement from patent owners for that opportunity. Further, since Netflix's basis for § 285 attorneys' fees is purported litigation misconduct, "***the amount of the award must bear some relation to the extent of the misconduct***." *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1106 (Fed. Cir. 2003). And here, Netflix simply cannot show that the fees incurred in the IPR proceedings bear any relation to Realtime's purported forum shopping.

Moreover, Netflix improperly included fees relating to its IPRs for the '298 and '462/'777 patents, for which the Delaware court *denied* Netflix's motion to dismiss. Doc. 34-10. Netflix has no basis to request any fees with respect to these patents.

The cases cited by Netflix do not support its position that it is automatically entitled to all fees incurred in any proceeding involving the asserted patents. To the contrary, in the *Drone Techs., Inc. v. Parrot S.A.*, No. 2:14-CV-00111-AJS, 2015 WL 4545291 (W.D. Pa. July 21, 2015) case cited by Netflix, the court *excluded* fees from a separate litigation and IPR which were not "reasonably and necessarily attributable to" the case before it. *Id.* at *9. And in *Munchkin*, *supra*, the court awarded fees for the IPR proceedings pursuant to its finding that plaintiff knew or should have known that its patents were invalid. 2018 WL 7504404, at *5–6. Thus, the defendant would not have incurred the IPR fees "but for" the filing of plaintiff's meritless case. *Id.* at *7. Here, by contrast, Netflix cannot establish that Realtime's patent infringement claims were meritless. Nor can Netflix establish that it would not have filed the IPRs—which again, are *still pending* and accumulating fees despite the fact that Realtime has dismissed all claims against Netflix—but for Realtime's purported forum shopping. Netflix's cases are inapplicable.

In other words, Netflix's request for fees from IPR proceedings and the Delaware Action depends on its unsupported and expansive "but for" theory of fee shifting. It also depends on the Court finding that Realtime's claims were objectively

and exceptionally baseless at the time the Delaware Action was filed. Of course, Netflix does not come close to making this showing. And Realtime already refuted this in Section B.1 above.

**D.    Netflix's Alternative Request for Fees Under This Court's Inherent Powers Falls Well Short of Satisfying That Heightened Standard and Also Fails**

Use of the court's "inherent authority is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. 2:16-cv-04502-MLH (MRWx), 2018 WL 6016990, at *6 (C.D. Cal. Sept. 4, 2018) (internal quotation marks omitted) (denying request for sanctions under the court's inherent authority because the case was not exceptional and the record did not support a finding of bad faith or fraud).

Netflix's request for attorneys' fees pursuant to the Court's inherent powers fails for the reasons above. As Netflix cannot establish that this case exceptional simply because Realtime voluntarily dismissed its cases and opposed transfer, Netflix certainly cannot meet the heightened standard of showing subjective bad faith. *See EON Corp.IP Holdings LLC v. Cisco Sys. Inc*, No. 12-CV-01011-JST, 2014 WL 3726170, at *6 (N.D. Cal. July 25, 2014) ("Since Defendants have not demonstrated that they have satisfied the lower bar for sanctions under the Patent Act, the Court also concludes that Defendants have not met the *considerably higher bar* for sanctions under . . . the Court's inherent authority.").

**E.    Consistent with Its Flawed Arguments Regarding Entitlement to Fees, the Amount of Netflix's Claimed Fees Are Excessive and Unreasonable on Its Face**

Although Netflix is not entitled to any fees for multiple, dispositive reasons, Realtime must briefly respond to the claimed fees. A review of Netflix's fee requests,

which currently total an astounding $2,998,384.05[11]—***nearly $3 million*** and counting[12]—for a case that never progressed past the pleading stage shows that they are not only unreasonable, they are outrageous.

For starters, Netflix seeks a staggering $2,170,000 in fees associated with the IPR proceedings. While Netflix has failed to provide any documentation to support the fees requested, it is nonetheless clear this amount is unreasonable.

Netflix also seeks $62,252.40 for its opposition to Realtime's motion for centralization as a multi-district litigation (MDL), on which multiple attorneys from two different firms purportedly spent a total of *71.02 hours*. On its face, this is unreasonable for a single brief on a relatively simple procedural issue. But upon review of what was actually filed by Netflix, it is clear that the requested fees are, to put it bluntly, absurd. Rather than submitting full briefing in opposition to the MDL motion, Netflix merely submitted a five-page *notice of joinder in the opposition filed by other several other defendants*. Ex. 10. Even worse, Netflix selectively omitted the MDL "opposition" it filed from its Rule 41 motion, thereby preventing the Court from being able to properly assess the reasonableness of its fee request. While Netflix's motion provides copies of all of the other briefs for the it filed in the Delaware Action for which it is now seeking fees, Netflix inexplicably omitted its opposition to the MDL motion, which is not available on the Delaware court's online docket. Netflix only provided the JPML's order denying the motion (Hadden Decl., Ex. B), which is useless for determining whether the amount of fees claimed by Netflix is reasonable— presumably because a review of the five-page notice reveals that they are not.

---

[11] Netflix's motion improperly fails to state the total amount of fees sought as required by Rule 54(d)(2)(B)(iii). Instead, Netflix leaves it to Realtime and the Court to pore over hundreds of pages in attorney declarations and exhibits to determine what exactly Netflix is seeking.

[12] Netflix's declarations indicate that its calculations do not include its most recent billing, and that it also plans to "supplement" its declarations to provide "a more precise accounting" of its claimed fees. Doc. 34-1 ¶ 32–33; Doc. 34-39 ¶ 15.

Netflix's remaining fee requests are likewise unreasonable. For example, Netflix's attorneys purportedly spent *254.76 hours* on its motion to dismiss in the Delaware Action, *160.3 hours* on its motion for attorneys' fees under Rule 41(d), *153.3 hours* on its motion to transfer this case to Delaware, and *82.34 hours* on its motion to transfer the Delaware Action, claiming an unbelievable 650.7 hours and $432,291.90 in fees for just four motions, none of which required any discovery. Netflix also makes a vague request for nearly $250,000 in fees (over 364 hours) for "case management."[13] Netflix fails to provide any other information as to what these fees represent, and it impossible to determine which items from Netflix's hundreds of pages of invoices correspond to this category.

The Court should not be burdened with having to determine what portion of Netflix's claimed $3 million constitutes reasonable fees. As famously stated by the Seventh Circuit, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). And in this Circuit, "[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or ***deny one altogether***." *Yagman v. Edmondson*, 723 F. App'x 487 (9th Cir. 2018); *see also Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2015 WL 12670201, at *6 (C.D. Cal. Apr. 29, 2015). Netflix's outrageously excessive request for $3 million in attorneys' fees should not be treating as an opening bid, and should be denied altogether.

## V.   CONCLUSION

For the foregoing reasons, Netflix's motion should be denied.

---

[13] Notably, Netflix's prior motion for attorneys' fees under Rule 41(d) did not request any fees for purported "case management."

DATED: January 8, 2020                  RUSS AUGUST & KABAT
Marc A. Fenster
Reza Mirzaie
Brian D. Ledahl
Paul A. Kroeger
C. Jay Chung
Philip X. Wang


By:  *Reza Mirzaie*
      Reza Mirzaie
      *Attorneys for Plaintiff Realtime Adaptive*
      *Streaming LLC*

1

## <u>CERTIFICATE OF SERVICE</u>

2

   I certify that a true copy of the foregoing document has been served on January

3

8, 2020 to all counsel of record via electronic service.

4

5

DATED: January 8, 2020          <u>/s/ *Reza Mirzaie*   </u>

6

                                Reza Mirzaie

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28