J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Counsel for Defendants
NETFLIX, INC. and NETFLIX
STREAMING SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NETFLIX, INC. and NETFLIX STREAMING SERVICES, INC.,<br><br>　　　　　Defendants. | Case No.: 2:19-cv-06361-GW(JCx)<br><br>**DECLARATION OF TODD R. GREGORIAN IN SUPPORT OF MOTION OF DEFENDANTS NETFLIX, INC. AND NETFLIX STREAMING SERVICES, INC. FOR SUPPLEMENTAL ATTORNEY FEES**<br><br>Date:　　　January 9, 2023<br>Time:　　　8:30 a.m.<br>Courtroom:　9D<br>Judge:　　　Honorable George H. Wu |

I, Todd R. Gregorian, declare as follows:

1. I am an attorney duly admitted to practice in California. I am a partner at the law firm of Fenwick & West LLP ("Fenwick") in San Francisco, California, and counsel for Defendants Netflix, Inc. and Netflix Streaming Services, Inc. (together, "Netflix") in this matter (the "6361 action"), related Case No. 2:19-cv-06359 (the "6359 action"), and Court of Appeals for the Federal Circuit Case Nos. 21-1484, 21-1518, 21-1519. I have personal knowledge of the facts stated in this declaration.

## This Court's fee award

2. On November 23, 2020, the Court granted in part Netflix's motion for attorney fees and costs, awarding Netflix $409,402.50. 6361 action, Dkt. 70; 6359 action, Dkt. 57.

3. The Court first held that Netflix was the prevailing party in the litigation under 35 U.S.C. § 285 because Realtime's second voluntary dismissal was with prejudice and constituted an adjudication on the merits of the claims. *Id.* at 7-8.

4. The Court then held that this case was exceptional based on: (a) Realtime's decision to voluntarily dismiss its action against Netflix in the District of Delaware when an adverse ruling invalidating multiple patents was imminent, and then re-file its same patent infringement claims as two cases in the Central District of California; and (b) Realtime's decision to oppose transfer back to the District of Delaware after it had originally opposed a transfer of the Delaware case to California. *Id.* at 10-11. The Court also ruled that even if Netflix was not a "prevailing party" under § 285, it would still award Netflix fees under the Court's inherent power to sanction. *Id.* at 16.

5. The Court awarded Netflix its fees for both California cases, but denied recovery of fees for work in the original Delaware case and the related *inter partes* review ("IPR") proceedings that Netflix had filed in response. *Id.* at 11-14. The Court ruled that it was uncertain whether § 285 authorized it to award the IPR, but in

1 any event the Court would deny those fees because it was not clear that Realtime
2 knew or should have known its claims were baseless when first filed in Delaware.
3 *See id*.

4      6.     The Court found that "the award requested by Netflix's counsel
5 represents an appropriate lodestar amount." *Id.* at 16.

### Summary of events since this Court's fee award

7      7.     Realtime appealed on December 23, 2020. 6361 action, Dkt. 71; 6359
8 action, Dkt. 58. In its appeal, Realtime challenged this Court's rulings that Netflix
9 was a "prevailing party," that Realtime's conduct made the case "exceptional," and
10 that the Court could use its inherent powers to award fees absent an express finding
11 that Realtime had acted in bad faith. Realtime's Principal Br., Fed. Cir. No. 21-1484,
12 Dkt. 23, attached as **Exhibit A**.

13      8.     Netflix cross-appealed on January 4, 2021. *See* 6361 action, Dkt. 72;
14 6359 action, Dkt. 63. It argued that § 285 authorizes recovery of fees for the IPR
15 proceedings and Delaware litigation, and that the Federal Circuit should therefore at
16 least remand for further consideration after clarifying the law. *See* Netflix's Opening
17 and Resp. Br., Fed. Cir. No. 21-1484, Dkt. 31, attached as **Exhibit B**.

18      9.     The automatic stay on enforcement of the judgment expired on
19 December 23, 2020. Fed. R. Civ. P. 62(a). At that point, Netflix began efforts to
20 secure the judgment pending appeal, that Realtime resisted for months, creating
21 needless expense for both parties.

22      10.     On December 24, 2020, I emailed Realtime's counsel to confirm
23 whether Realtime intended to post a bond staying the enforcement of the judgment.
24 Realtime's counsel responded to set up a time for a phone call. A true and correct
25 copy of this email correspondence is included in **Exhibit C** at 4.

26      11.     On December 31, 2020, Realtime's counsel and I conferred by phone.
27 *See id.* at 3. During my communications with Realtime's counsel, counsel for
28 Realtime expressed that Realtime would *consider* posting a bond.

FENWICK & WEST LLP
ATTORNEYS AT LAW

12. On February 10, 2021, I emailed Realtime's counsel requesting that Realtime either pay the Court's judgment in full or post a bond in the appropriate amount. *Id.* at 2. I told Realtime's counsel that if Netflix was forced to incur additional fees for enforcement, it would seek to recover those fees from Realtime. Realtime's counsel did not respond to this email. *Id.* On February 12, 2021, I followed up on this email. *Id.* Counsel for Realtime responded that he was conferring with his client and expected to get back to me the next week about posting the bond. *Id.* Given that it had been more than six weeks since the stay on enforcement expired, I informed Realtime's counsel that Netflix would proceed with post-judgment discovery. *Id.* at 1.

13. At this point, Netflix had no information about the location of Realtime's accounts or assets that might be used to satisfy the judgment. From my experience in the field, IP-assertion entities like Realtime are often structured as pass-through entities and purposefully undercapitalized to evade payment of fee awards. Settlement proceeds, for example, are often quickly distributed to the principals and lawyers, sometimes even when a judgment is already outstanding. *Giganews, Inc. v. Perfect 10, Inc.*, No. 2:17-cv-05075-AB (JPR) (C.D. Cal.) is one such case I have litigated in this District that evidences this behavior.

14. Enforcing or securing the judgment is significantly more efficient than filing a new lawsuit alleging fraudulent transfer after Realtime has dissipated its assets. For that reason, on February 12, 2021, Netflix served discovery in aid of enforcement consistent with my notice Realtime's counsel:

    a. Attached as **Exhibit D** is a true and correct copy of Netflix's First Set of Interrogatories to Realtime Pursuant to FRCP 69 and CCP § 708.030.

    b. Attached as **Exhibit E** is a true and correct copy of Netflix's First Set of Requests for Production of Documents to Realtime Pursuant to FRCP 69 and CCP § 708.030.

15. The same day, Netflix also applied for a Judgment Debtor Examination. 6359 action, Dkt. 68. The Court ordered an examination on February 22, 2021 and set it for September 21, 2021. *Id.*, Dkt. 69.

16. On March 15, 2021, Realtime served its responses to the discovery requests. Realtime did not answer a single interrogatory or produce any documents. Instead, it objected to each request with lengthy boilerplate objections including that each request was "premature, as the 'judgment' that [Netflix] seeks to enforce is currently the subject of an appeal and cross-appeal before the Federal Circuit."

    a. Attached as **Exhibit F** is a true and correct copy of Realtime's Responses to Netflix's First Set of Interrogatories.

    b. Attached as **Exhibit G** is a true and correct copy of Realtime's Responses to Netflix's First Set of Requests for Production of Documents.

17. On March 16, 2021, along with my co-counsel Joshua Stein, I conferred with Realtime's counsel by phone. During this call, I noted that Realtime's objections to Netflix's requests were improper. Specifically, I noted that the objection that the requests are premature was baseless, given that the automatic stay of judgment enforcement had expired and Realtime had not posted a supersedeas bond. I also stated my belief that, whatever other disputes the parties have concerning the discovery, maintaining this "prematurity" objection was an improper attempt to obstruct collection on the judgment and fell below the standards required of counsel by Rule 11, and I offered Realtime's counsel the opportunity either to explain his basis or withdraw this objection. He did not offer any authority or explanation for continuing to maintain the objection.

18. On that same call, Realtime's counsel conceded that the requests sought some relevant and discoverable information, but that Realtime had some objections to scope that it had not specified in its responses. I explained that the Federal Rules do not allow a responding party to refuse to respond based on an overbreadth/scope

objection; instead the party must state which portion of a request it objects to while providing a substantive response to the remainder. At least three times on the call I requested that Realtime's counsel discuss Realtime's objections on a request-by-request basis in order to ascertain Realtime's undisclosed objections and resolve them. Realtime's counsel refused. And he made no commitment to produce any documents or information. I stated that Netflix may move to compel the responses. Attached as **Exhibit H** is a true and correct copy of Mr. Stein's March 17, 2021 email to Realtime's counsel, copying me, confirming the details of the phone call. I have read that email and confirmed that it describes the call accurately.

19. On March 19, 2021, along with my co-counsel Mr. Stein, I again conferred by phone with counsel for Realtime. During this call, I offered the following compromise: if Realtime provided information sufficient for Netflix to identify and levy against Realtime's bank accounts—and additionally would warrant to Netflix that it would leave funds in them sufficient to satisfy the judgment—then Netflix would not proceed with a motion to compel. Attached as **Exhibit I** is a true and correct copy of Mr. Stein's March 19, 2021 email to Realtime's counsel, copying me, confirming the details of the call. I have read that email and confirmed that it describes the call accurately.

20. On March 23, 2021, I emailed Realtime's counsel asking whether Realtime had posted a bond. Attached as **Exhibit J** is a true and correct copy of that email. Realtime's counsel emailed stating that Realtime intended to (a) post a supersedeas bond and (b) move for a stay of enforcement of the judgment pending appeal. A few minutes later, I responded, asking by what date Realtime would post the bond. Realtime did not respond to that email request. Attached as **Exhibit K** is a true and correct copy of that email correspondence.

21. On March 25, 2021, my co-counsel Mr. Stein again conferred by phone with counsel for Realtime. Mr. Stein asked if Realtime would post bond the next week. Realtime's counsel would not commit to a date certain and instead responded

that Realtime was aiming to post bond either by the end of that week or early the following week. Attached as **Exhibit L** is a true and correct copy of Mr. Stein's email to me summarizing this call.

22. Nearly a week later, on March 31, 2021, Realtime's counsel emailed me about the mechanics of posting the bond, and again stated that Realtime intended to post by the following week or sooner. Later that day, I responded about the amount of the bond and where Realtime would deposit the funds. Realtime did not respond to that email. Attached as **Exhibit M** is a true and correct copy of that email correspondence.

23. Realtime still had not secured the judgment as of April 5, 2021, and so Netflix resumed its efforts to enforce the judgment. It served Realtime a proposed joint stipulation regarding Netflix's motion to compel discovery responses—including a seventeen-page draft stipulation, a supporting declaration, seven exhibits, and a proposed order. A true and correct copy of Netflix's service email, with all attachments, is attached as **Exhibit N**.

24. On April 6, 2021, Realtime's counsel emailed me a proposed joint motion for posting a supersedeas bond and staying the judgment pending appeal. Attached as **Exhibit O** is a true and correct copy of that email. The parties filed the joint motion on April 9, 2021. 6361 action, Dkt. 77.

25. On July 27, 2022, the United States Court of Appeals for the Federal Circuit affirmed this Court's fee award. *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372 (Fed. Cir. 2022), attached as **Exhibit P**. The Federal Circuit held that "[t]he blatant gamesmanship presented by the facts of this case constitutes a willful action for an improper purpose, tantamount to bad faith, and therefore within the bounds of activities sanctionable under a court's inherent power in view of the Ninth Circuit's standard." *Id.* at 1379-80. It also ruled that the Court did not abuse its discretion in awarding fees for only the California actions and not the Delaware action or the IPR proceedings. *Id.* at 1380. The Court did not reach the questions of

whether Netflix was a prevailing party entitled to fees under § 285, or whether § 285 authorizes recovery of fees incurred in a related IPR.

## Netflix incurred a reasonable amount of attorney fees considering the work performed since the Court's fee award

26. I served as counsel for Netflix before this Court and in the Federal Circuit appeal. I worked directly on these matters, supervised the Fenwick team in the appeal, and reviewed and approved Fenwick's invoices. I therefore understand the work performed by Fenwick's attorneys and staff on the matter and the corresponding amounts charged to the client.

27. In my role, I am familiar with Fenwick's general business and billing practices. Fenwick sets its hourly billing rates to be competitive with rates generally charged by other full-service law firms for attorneys of similar experience.

28. The Court found that the requested fees in 2019 represented "an appropriate lodestar amount." 6361 action, Dkt. 70 at 16; 6359 action, Dkt. 57 at 16. Fenwick has increased its rates annually since that time to keep up with its competitors in the market. But for timekeepers who worked on the matter in 2019, Netflix requests the same hourly rates that the Court approved, resulting in a substantial discount to the total request.

29. For timekeepers who joined the matter after the initial fee award, Netflix requests the rates that it was charged. Netflix received a 10% discount on 2022 invoices, which is reflected in the effective timekeeper rates reported below. I provide further substantiation of the reasonableness of these rates in the following paragraphs.

30. Both the Federal Circuit Court of Appeals and the Central District of California have a high volume of patent litigation. Printouts from the Lex Machina database showing the large volume of patent litigation matters filed in the Federal Circuit Court of Appeals and the Central District of California are attached as **Exhibits Q-R**. These matters require specialized knowledge and experience, similar

to the expertise of the Fenwick team who worked on the Federal Circuit and California actions, and typically command billing rates higher than the average federal court litigation.

31. Fenwick attorneys routinely appear in patent litigation matters in the Federal Circuit and the Central District of California, as do attorneys of many other large firms that command similar billing rates. Printouts from Docket Navigator showing appearances by Fenwick in patent litigation matters in the Federal Circuit since 2008 and the Central District of California since 2002 are attached, respectively, as **Exhibits S-T**. Given this information, the billable rates charged by the specific attorneys and paralegals on this case are reasonable for their respective levels of expertise for the Federal Circuit and the Central District of California generally.

32. District Courts have routinely found Fenwick's rates reasonable. 6361 action, Dkt. 70 at 16; 6359 action, Dkt. 57 at 16; *accord Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *16-21 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (Fenwick's rates were "reasonable and w[ere] comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation"); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545, at *7 (N.D. Cal. Nov. 6, 2014) (plaintiff conceded Fenwick's rates "were reasonable"); *Jones v. Corbis Corp.*, 2011 WL 4526084, at *1-2 (C.D. Cal. Aug. 24, 2011); *Netbula, LLC v. Chordiant Software, Inc.*, 2010 WL 11575580, at *5 (N.D. Cal. Dec. 17, 2010) ("[Fenwick's] rates are comparable to other full service firms in the Bay Area and are reasonable."); *Yue v. Storage Tech. Corp.*, 2008 WL 11256331, at *4 (N.D. Cal. Aug. 6, 2008) (report and recommendation) (same), *adopted by* 2008 WL 4185835 (N.D. Cal. Sept. 5, 2008).

33. The Fenwick lawyers and staff who worked on enforcing the judgment, the Federal Circuit appeal, and/or this supplemental fee request include:

a. Todd Gregorian, partner at Fenwick. I am a member in good standing with the California State Bar and have practiced law in the State of California since 2005. I was recognized as a "Rising Star" by Northern California *Super Lawyers* for 2013-2019. My billing rate at which the Court previously awarded fees, and at which Netflix has requested reimbursement for my time, is $680 per hour. My current billing rate is $1,095 per hour. My firm biography detailing more of my experience is available at https://www.fenwick.com/people/todd-r-gregorian.

b. Joshua Michelangelo Stein, former associate at Fenwick. Mr. Stein was previously employed by Boise Schiller Flexner LLP and has gone on to in house roles with Twitter and Clipboard Health, where he currently serves as the Director of Litigation. Mr. Stein's rate for 2021 was $775 per hour.

c. Deena Feit, associate at Fenwick. Ms. Feit is a member in good standing with the bars of the State of Washington and the Commonwealth of Massachusetts. She has practiced litigation since 2017 and previously served as a law clerk at the United States Court of Appeals for the First Circuit and the United States District Court for the District of Massachusetts. Ms. Feit's billing rate was $775 per hour in 2021 and her effective rate (applying the ten percent discount that Netflix received) was $873 per hour in 2022. Ms. Feit's firm biography detailing more of her experience is available at https://www.fenwick.com/people/deena-feit.

d. Rina Plotkin, associate at Fenwick. Ms. Plotkin is a member in good standing with the California State Bar and has two years of experience in intellectual property litigation. Ms. Plotkin's billing rate was $445 per hour in 2021 and her effective rate for this matter was $607 in 2022. Ms. Plotkin's firm biography detailing more of her experience is available at https://www.fenwick.com/people/rina-plotkin.

e. Robert Winant, litigation paralegal specialist at Fenwick, with more than 30 years of legal experience. Mr. Winant's billing rate was $350 per hour in 2020 and $430 per hour in 2021.

      f.     Sandra Pomeroy, former paralegal at Fenwick, with 29 years of legal experience. Ms. Pomeroy's rate at which the Court previously awarded fees, and at which Netflix has requested reimbursement for her time, is $355 per hour. Ms. Pomeroy's 2021 billing rate was $430 per hour.

      g.     Lawrence Gallwas, litigation paralegal specialist at Fenwick, with 18 years of legal experience. Mr. Gallwas' rate at which the Court previously awarded fees, and at which Netflix has requested reimbursement for his time, is $350 per hour. Mr. Gallwas' current billing rate is $440 per hour.

34.     Fenwick's representation of Netflix in the Federal Circuit appeal included the following tasks:

    a.     Research for and drafting the response brief and reply brief.

    b.     Preparing for oral argument.

    c.     Preparing and filing a letter with supplemental authorities under Federal Rule of Appellate Procedure 28(j).

35.     Netflix has excluded from its request:

    a.     More than $230,000 in fees incurred pursuing the cross-appeal of the Court's fee order. While such fees technically are recoverable under § 285, Netflix elected to pursue the cross-appeal issues and they expanded the appeal.

    b.     $9,350 in fees for Laurence Pulgram, a partner at Fenwick who assisted with preparation for oral argument.

36.     In addition, Joshua Stein left Fenwick while the appeal was pending, and Deena Feit stepped into his role. "Ramp up" hours associated with the transition are excluded from this request, both because Netflix was not charged for them and because they were incurred in connection with work on the cross appeal.

37. The tables below summarize the fees incurred by Netflix and charged by Fenwick in connection with the Federal Circuit action, net of the write-offs discussed above:

**Summary Chart of Attorney Fees from Fenwick in Federal Circuit Appeal**

| Table 1 - Fees by Task | | | |
|---|---|---|---|
| *Task 1: Briefing* | | | |
| **Attorney** | **Rate/Hour** | **Hours** | **Fee** |
| Gregorian, Todd (Partner) | $680 | 109.7 | $74,596.00 |
| Stein, Joshua Michelangelo (Associate) | $775 | 136.6 | $105,865.00 |
| Feit, Deena (Associate) | $775 | 0.8 | $620.00 |
| Plotkin, Rina (Associate) | $445 | 144.7 | $64,391.50 |
| Gallwas, Lawrence (Paralegal) | $350 | 15.8 | $5,530.00 |
| Pomeroy, Sandra (Paralegal) | $355 | 24.0 | $8,520.00 |
| Winant, Robert T. (Paralegal) | $430 | 1.8 | $774.00 |
| **Fee Request for Task 1** | | **434.6** | **$260,296.50** |
| *Task 2: Oral argument* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| Gregorian, Todd (Partner) | $680 | 23.5 | $15,980.00 |

| | | | |
|---|---|---|---|
| Feit, Deena (Associate) | $873 | 1.5 | $1,309.50 |
| Plotkin, Rina (Associate) | $607 | 1.7 | $1,031.90 |
| Pomeroy, Sandra (Paralegal) | $355 | 0.7 | $248.50 |
| **Fee Request for Task 2** | | **27.4** | **$18,569.90** |
| *Task 3: 28(j) letters* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| Gregorian, Todd (Partner) | $680 | 3.9 | $2,652.00 |
| Feit, Deena (Associate) | $873 | 2.3 | $2,007.90 |
| Plotkin, Rina (Associate) | $607 | 5.8 | $3,520.60 |
| **Fee Request for Task 3** | | **12.0** | **$8,180.50** |
| *Total for All Tasks* | | | |
| **Total** | | Hours | 472.8 |
| | | Fees | $287,046.90 |

| Table 2 - Fees by Attorney | | | | |
|---|---|---|---|---|
| **Attorney** | **Rate/Hour** | **Hours by Task** | | **TOTALS** |
| Gregorian, Todd (Associate) | $680 | Task | Hours Spent by Attorney on Tasks | **Total Hours:** 137.1<br>**Amount:** $93,228.00 |
| | | Briefing | 109.7 | |
| | | Oral argument | 23.5 | |
| | | 28(j) letters | 3.9 | |
| Stein, Joshua Michelangelo (Associate) | $775 | Task | Hours Spent by Attorney on Tasks | **Total Hours:** 136.6<br>**Amount:** $105,865.00 |
| | | Briefing | 136.6 | |
| | | Oral argument | 0 | |
| | | 28(j) letters | 0 | |
| Feit, Deena (Associate) | $775 (2021)<br>$873 (2022) | Task | Hours Spent by Attorney on Tasks | **Total Hours:** 4.6<br>**Amount:** $3,937.40 |
| | | Briefing | 0.8 | |
| | | Oral argument | 1.5 | |
| | | 28(j) letters | 2.3 | |
| | | Task | Hours Spent by | |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Plotkin, Rina (Associate) | $445 (2021) $607 (2022) |              | Attorney on Tasks | **Total Hours:** 152.2 **Amount:** $68,944.00 |
|---|---|---|---|---|
|   |   | Briefing     | 144.7 |   |
|   |   | Oral argument | 1.7 |   |
|   |   | 28(j) letters | 5.8 |   |
| Gallwas, Lawrence (Paralegal) | $350 | Task | Hours Spent by Attorney on Tasks | **Total Hours:** 15.8 **Amount:** $5,530.00 |
|   |   | Briefing | 15.8 |   |
|   |   | Oral argument | 0 |   |
|   |   | 28(j) letters | 0 |   |
| Pomeroy, Sandra (Paralegal) | $355 | Task | Hours Spent by Attorney on Tasks | **Total Hours:** 24.7 **Amount:** $8,768.50 |
|   |   | Briefing | 24.0 |   |
|   |   | Oral argument | 0.7 |   |
|   |   | 28(j) letters | 0 |   |
| Winant, Robert T. (Paralegal) | $430 | Task | Hours Spent by Attorney on Tasks | **Total Hours:** 1.8 **Amount:** $774.00 |
|   |   | Briefing | 1.8 |   |
|   |   | Oral argument | 0 |   |

FENWICK & WEST LLP
ATTORNEYS AT LAW

|  |  | 28(j) letters | 0 |  |  |
|---|---|---|---|---|---|
| Total: |  |  |  | Hours: | 472.8 |
|  |  |  |  | Amount: | $287,046.90 |

38. These legal fees incurred were necessary to properly oppose Realtime's appeal. The sum of fees incurred by Netflix and charged by Fenwick in connection with the Federal Circuit appeal for which Netflix requests reimbursement is $287,046.90. Fenwick's invoices reflecting the work summarized above are included in **Exhibit U**.

39. Fenwick's fees incurred in the California action since the Court's fee award are also reasonable. Fenwick's representation of Netflix in this Court since its previous fee request included:

    a. Efforts to secure or enforce the judgment while Realtime refused for months Netflix's demand that it post a supersedeas bond.

    b. Research for and preparing this supplemental fee request through November 11, 2022.

40. Netflix has excluded from its request fees for work related to having the funds deposited with the Court released to Netflix, as well as time spent on stipulations to extend the time to file the motion for supplemental fees.

41. The tables below summarize the fees and costs incurred by Netflix and charged by Fenwick in connection with the California actions, net of the write-offs discussed above:

**Summary Chart of Attorney Fees from Fenwick & West re Judgment Enforcement**

| Attorney | Rate/Hour | Hours | Fee |
|---|---|---|---|
| Gregorian, Todd (Partner) | $680 | 11.9 | $8,092.00 |
| Stein, Joshua Michelangelo (Associate) | $775 | 25.0 | $19,375.00 |

| Plotkin, Rina (Associate) | $445 | 21.8 | $9,701.00 |
|---|---|---|---|
| Pomeroy, Sandra (Paralegal) | $355 | 5.1 | $1,810.50 |
| Winant, Robert T. (Paralegal) | $350 (2020) $430 (2021) | 3.8 | $1,474.00 |
| **Fee Request for Judgment Enforcement** | | **67.6** | **$40,452.50** |

**Summary Chart of Attorney Fees from Fenwick & West re Motion for Supplemental Attorney Fees**

| Attorney | Rate/Hour | Hours | Fee |
|---|---|---|---|
| Gregorian, Todd (Partner) | $680 | 18.5 | $12,580.00 |
| Feit, Deena (Associate) | $873 | 19.0 | $16,587.00 |
| Plotkin, Rina (Associate) | $607 | 43.3 | $26,283.10 |
| **Fee Request for Fee Motion** | | **80.8** | **$55,450.10** |

42. These legal fees and expenses incurred were necessary to properly enforce the judgment against Realtime and pursue this supplemental fee request. The sum of fees incurred by Netflix and charged by Fenwick in connection with this work for which Netflix requests reimbursement is $95,902.60. Fenwick's invoices reflecting the work summarized above are included in **Exhibit U**.

43. The total supplemental fee award requested by Netflix through November 11, 2022 is $382,949.50.

44.  I estimate that Fenwick's fees after November 11, 2022, including for finalizing the motion for supplemental attorney fees and supporting declaration, drafting the reply brief, and preparing for argument on the motion, will be roughly $70,000.00. Netflix will supplement this declaration to provide a more precise accounting of these fees after completing these tasks.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in San Francisco, California on November 17, 2022.

/s/ Todd R. Gregorian
Todd R. Gregorian